JIMMIE CLARK, Employee-Plaintiff-Appellee v. ITT GRINNELL INDUSTRIAL PIPING, INCORPORATED, Employer-Defendant-Appellant, LIBERTY MUTUAL INSURANCE COMPANY, Carrier-Defendant-Appellant, CIGNA INSURANCE COMPANY, Carrier-Defendant-Appellant

No. COA99-246

(Filed 29 December 2000)

1. Workers' Compensation— asbestosis—sufficiency of evidence

The Industrial Commission did not err in a workers' compensation action by finding that plaintiff had asbestosis as defined by N.C.G.S. § 97-62 where the record contained the opinions of three doctors that plaintiff had lung conditions consistent with or characteristic of asbestos exposure.

2. Workers' Compensation— asbestosis—last injurious exposure—sufficiency of evidence

There was sufficient evidence in a workers' compensation action to support the Industrial Commission's findings that plaintiff was injuriously exposed to the hazards of asbestos while employed by defendant-ITT. Plaintiff specifically testified that he wore asbestos gloves, that he would lay asbestos wrap over pipes, and that the railroad bottom of a furnace which carried asbestos would be rolled near his work position when he worked for defendant; another employee testified that he also wore asbestos gloves and that he would prepare a pipe for the furnace by putting an asbestos wrap on it; and the senior engineer for the plant, a witness for defendant, acknowledged that ITT "probably used some form of asbestos wrap" before he arrived there. The Commission is the sole judge of the credibility of witnesses and the weight to be given their testimony.

3. Workers' Compensation— issue raised in Industrial Commission review

The fact that a workers' compensation issue was not raised until it was reviewed by the Industrial Commission is of no consequence to the appellate review of the case. It is the Commission's duty to consider every aspect of the claim whether before the hearing officer or on appeal to the Commission.

4. Workers' Compensation— asbestosis—dusty trades—compensation scheme

The Industrial Commission did not err in a workers' compensation asbestos case by applying N.C.G.S. § 97-60 through 61.7

even though there was no evidence that plaintiff was engaged or about to engage in an occupation that the Commission had found to expose employees to the hazards of asbestosis. N.C.G.S. § 97-60, which requires that potential and current employees be screened for asbestos-related disorders, is limited to persons engaged in or about to engage in an industry classified as a dusty trade, but the employer's status as a dusty trade does not impact the application of the examination and compensation scheme set forth in N.C.G.S. § 97-61.1 through 61.7.

### 5. Workers' Compensation— asbestosis—removal from industry—not required

An employee suffering from an asbestos-related disease need not be removed from employment to be entitled to the 104 weeks of compensation set forth in N.C.G.S. § 97-61.5. The language of N.C.G.S. § 97-61.5(b), read alone, appears to require that an employee be removed from the industry, but construing that statute in pari materia with N.C.G.S. § 97-61.7 evidences the General Assembly's intent to allow an injured worker to remain in the harmful work environment and receive the 104 weeks of compensation.

### 6. Constitutional Law— equal protection—workers' compensation—asbestosis

N.C.G.S. § 97-60 and 61.1 through 61.7 do not violate defendants' rights to equal protection in that occupational diseases other than asbestosis or silicosis do not provide an automatic 104 weeks of compensation.

### 7. Workers' Compensation— asbestosis—average weekly wage—calculation

The Industrial Commission's findings in a workers' compensation case were insufficient to support its conclusion regarding an asbestosis plaintiff's average weekly wage and the matter was remanded to the Industrial Commission. The Commission made no findings regarding the fair and just method of calculating the wage, so that it must be assumed that the Commission was relying upon the first method set out in N.C.G.S. § 97-2(5); that method requires looking at the plaintiff's employment immediately preceding diagnosis; and the Commission made the calculation by looking at the last full year of employment. There is no requirement of actual disablement in the asbestosis statutes.

CLARK v. ITT GRINNELL IND. PIPING, INC.

[141 N.C. App. 417 (2000)]

Appeal by defendants ITT Grinnell Industrial Piping, Inc. and Liberty Mutual Insurance Company from opinion and award entered 23 September 1998 by the North Carolina Industrial Commission. Heard in the Court of Appeals 18 November 1999.

*The Law Offices of Robin E. Hudson, by Robin E. Hudson and Samuel A. Scudder, for plaintiff-appellee.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by Thomas M. Clare, for defendant-appellant ITT Grinnell Industrial Piping Inc.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Hatcher Kincheloe, Patrick D. Sarsfield, II, J.A. Gardner, III, and Andrew R. Ussery, for defendant-appellant Liberty Mutual Insurance Company.*

*Cranfill, Sumner & Hartzog, L.L.P., by Gregory M. Kash, for defendant-appellee Cigna Insurance Company.*

*Wallace and Graham, P.A., by Mona Lisa Wallace, for the North Carolina Academy of Trial Lawyers, amicus curiae.*

*Johnston, Allison & Hord, P.A., by James W. Allison, for Carolinas AGC, Inc., amicus curiae.*

*Parker, Poe, Adams & Bernstein, L.L.P, by Josephine H. Hicks, for North Carolina Citizens for Business and Industry, amicus curiae.*

McGEE, Judge.

Pursuant to N.C. Gen. Stat. § 97-86 (Cum. Supp. 1998), defendant-employer ITT Grinnell Industrial Piping, Inc. (ITT Grinnell) and defendant-carrier Liberty Mutual Insurance Company (Liberty Mutual) appeal an opinion and award of the North Carolina Industrial Commission (the Commission) entered 23 September 1998. The Commission, in reversing the deputy commissioner's opinion and award entered 15 July 1997, awarded plaintiff-employee Jimmie Clark workers' compensation benefits for "Asbestos-related lung disease."

Plaintiff testified he worked as a pipe fitter for multiple employers for most of his life. He began working as a pipe fitter in 1952 at the age of eighteen in the shipyards of Newport News, Virginia, where he was exposed to asbestos products or dust during his employment.

Plaintiff changed jobs in June 1969, and for almost the next twenty-six years he was employed at an ITT Grinnell plant, formerly Carolina Industries Piping Company. ITT Grinnell fabricated pipes for use in nuclear power plants. Plaintiff began work in Bay One at ITT Grinnell as a pipe fitter for one week. He then worked in Bay Two for six months. Afterward, plaintiff trained in Bay Four for four months and then was transferred to Bay Three, where "heavy wall piping" was fabricated. Almost all of plaintiff's work, until the end of his employment in February 1985, occurred in Bay Three.

Plaintiff testified that as a pipe fitter in Bay Three his primary duties were to cut holes and preheat piping joints with a torch before they were fitted by welders. Plaintiff occasionally performed welding operations after he pre-heated a pipe.

As a pipe fitter, plaintiff testified that he wore "burning gloves" or mittens made of asbestos to protect his hands from the heat. He continued to wear the asbestos gloves until they were replaced with non-asbestos gloves in late 1974.

Plaintiff testified that he worked in proximity to where stress relief operations were performed on the floor in Bay Three. To perform stress relief, an electric coil was wrapped around the necessary part of the pipe and fitting. The heating coil and the pipe were then wrapped with asbestos cloth and secured. The pipe and cloth remained in that position until a certain temperature was reached. Plaintiff also testified that he would lay the asbestos wrap over a pipe that had been pre-heated.

During plaintiff's first year in Bay Three, the ITT Grinnell plant completed a special, free-standing stress relief furnace that sat outside the bay area. It had a railroad car bottom, approximately ten-feet wide by forty-feet long with "fire bricks" on it. This railroad car bottom was rolled from the outside furnace to the inside of Bay Three, very close to plaintiff's work position. Plaintiff testified in his deposition that the railroad car carried soft, fibrous mortar and dust. After the stress relief furnace was constructed, the plant rarely used the stress relief on the floor in Bay Three.

The Commission heard testimony of Samuel Andrews (Andrews), who was employed by ITT Grinnell from 1969 to 1977. Andrews said that he wore asbestos gloves every day to handle hot pipes. He confirmed plaintiff's testimony that asbestos wrap was used on hot pipes in Bay Three. Furthermore, Andrews testified that he saw white

CLARK v. ITT GRINNELL IND. PIPING, INC.

[141 N.C. App. 417 (2000)]

residue of asbestos on the pipe after the pipe came out of the stress relieving furnace.

Adolphus Young (Young) testified he worked for ITT Grinnell from 1969 to 1984. After Bay Three was completed, Young worked there most of the time. Young testified that he wore asbestos-containing gloves. In addition, he said that asbestos wrap was used during performance of stress relief on the floor. Later, Young operated the stress relief furnace. He stated that on a regular basis he would prepare a pipe for the furnace by putting an asbestos wrap on it.

Michael Valentine (Valentine), a senior welding engineer at ITT Grinnell from 1974 to 1985, testified that asbestos wrap was not used when the pipes went into the stress relief furnace. He also speculated that the ashes that accompanied the pipe after it was removed from the furnace were "related to [] the protective coating" of the pipe. However, Valentine also acknowledged that ITT Grinnell "probably used some form of asbestos wrap" before he began working there in 1974.

The Commission found as fact:

5. The Plaintiff's employment with Defendant/employer provided exposure to asbestos materials on a regular basis. These materials included asbestos welding gloves, asbestos pipe wrap, asbestos brick, asbestos mortar, asbestos dust from the railroad car from the outside furnace, and other asbestos containing materials. The plaintiff's last injurious exposure to asbestos was with Defendant/employer between the years 1974 through 1975, when the plant stopped using asbestos-containing products.

6. Plaintiff was diagnosed with asbestosis and was advised of this condition June 15, 1989.

. . . .

8. Plaintiff underwent his first and only Advisory Medical Committee examination by Dr. C.D. Young on November 4, 1991. It was Dr. Young's opinion that Plaintiff, more likely than not, had asbestosis.

Based on these findings of fact, the Commission concluded:

1. Plaintiff has asbestosis as defined by N.C. Gen. Stat. § 97-62. Plaintiff's last injurious exposure to asbestos occurred

while working for Defendant/employer before the plant stopped using asbestos materials. Therefore, Plaintiff is eligible for compensation pursuant to N.C. Gen. Stat. § 97-61.5.

2. In order for the uninsured Defendant/employer to incur liability in this case, Plaintiff's last injurious exposure to asbestos must have occurred during the time Defendant/employer was uninsured, which was before January 1, 1972. Plaintiff's last injurious exposure occurred after January 1, 1972. Therefore, the uninsured Defendant/employer has no liability.

. . . .

5. As a result of his contraction of asbestosis, Plaintiff is entitled to receive weekly compensation at the rate of $319.38 per week for a period of 104 weeks commencing as of November 4, 1991. N.C. Gen. Stat. § 97-61.5.

(Citation omitted.)

The Commission awarded plaintiff workers' compensation benefits from Liberty Mutual only, and all other claims of plaintiff against defendants were denied. Defendants appeal from the opinion and award of the Commission.

I.

[1] Defendants argue that the Commission erred in finding that plaintiff had asbestosis, as defined in N.C. Gen. Stat. § 97-62 (1991). Under the North Carolina Workers' Compensation Act, asbestosis is defined as the "characteristic fibrotic condition of the lungs caused by the inhalation of asbestos dust." *Id.* Relying on certain medical literature and learned treatises, defendants contend that asbestosis is "a distinct medical condition with specific characteristics and risks" and is distinguishable from "pleural plaques" in the lungs.

Our Court's standard of review in an appeal from the Commission is limited to two questions: (1) whether there is any competent evidence to support the Commission's findings of fact and (2) whether the findings support the Commission's conclusions of law. *See Lowe v. BE&K Construction Co.*, 121 N.C. App. 570, 573, 468 S.E.2d 396, 397 (1996). Our Supreme Court recently stated:

Under our Workers' Compensation Act, "the Commission is the fact finding body." "The Commission is the sole judge of

CLARK v. ITT GRINNELL IND. PIPING, INC.

[141 N.C. App. 417 (2000)]

the credibility of the witnesses and the weight to be given their testimony."

. . . .

"The findings of fact by the Industrial Commission are conclusive on appeal if supported by any competent evidence." Thus, on appeal, this Court "does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding."

N.C.G.S. § 97-86 provides that "an award of the Commission upon such review, as provided in G.S. 97-85, shall be conclusive and binding as to all questions of fact." As we stated in *Jones v. Myrtle Desk Co.*, 264 N.C. 401, 141 S.E.2d 632 (1965), "[t]he findings of fact of the Industrial Commission are conclusive on appeal when supported by competent evidence, even though there be evidence that would support findings to the contrary." The evidence tending to support plaintiff's claim is to be viewed in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence.

*Adams v. AVX Corp.* 349 N.C. 676, 680-81, 509 S.E.2d 411, 413-14 (1998) (alteration in original) (internal citations omitted), *reh'g denied*, 350 N.C. 108, 532 S.E.2d 522 (1999).

Viewing the evidence in the light most favorable to plaintiff, the record before us contains competent evidence to support the Commission's findings that plaintiff suffered from asbestosis. On 17 September 1990, plaintiff was examined by Dr. David E. Shanks (Dr. Shanks), an expert in pulmonary medicine who is affiliated with the North Carolina Industrial Commission's Advisory Medical Committee. According to Dr. Shanks' initial examination, plaintiff's x-rays indicated evidence of "pleural plaques and thickening." Dr. Shanks later opined that plaintiff had "fibrotic conditions of the lung [] characteristic of asbestos exposure." Dr. Clinton D. Young (Dr. Young), a pulmonary specialist, examined plaintiff on 4 November 1991 and found that "[c]hest x-ray reveals definite pleural plaques quite consistent with asbestos exposure." In his deposition testimony, Dr. Young stated:

Q . . . Do you have an opinion as to whether Mr. Clark more likely than not has asbestosis?

A  Yes.

Q  What is your opinion?

A  My opinion was that more likely than not, he did.

Dr. Andrew J. Ghio (Dr. Ghio), an expert in pulmonary medicine, reviewed plaintiff's x-rays on 8 August 1994 and observed "[e]vidence on chest radiograph consistent with a significant asbestos exposure." Dr. Ghio confirmed his opinion in later testimony. There was sufficient evidence in the record before the Commission to support its finding of fact that plaintiff has asbestosis.

## II.

[2] Defendants next challenge the sufficiency of the evidence supporting the Commission's findings that plaintiff was injuriously exposed to the "hazards" of asbestos while employed with defendant ITT Grinnell. The statute upon which defendants rely provides in part:

> In any case where compensation is payable for an occupational disease, the employer in whose employment the employee *was last injuriously exposed to the hazards of such disease,* and the insurance carrier, if any, which was on the risk when the employee was so last exposed under such employer, shall be liable.

> For the purpose of this section when an employee has been exposed to the *hazards of asbestosis* or silicosis for as much as 30 working days, or parts thereof, within seven consecutive calendar months, such exposure shall be deemed injurious but any less exposure shall not be deemed injurious . . . .

N.C. Gen. Stat. § 97-57 (1991) (emphasis added). More specifically, defendants contend the Commission lacked any scientific evidence concerning the presence of airborne, asbestos fibers at the ITT Grinnell plant. We disagree.

In *Gay v. J.P. Stevens & Co.*, 79 N.C. App. 324, 339 S.E.2d 490 (1986), the defendants argued that expert testimony about the plaintiff's exposure to toxic fumes while in the defendant-employer's employment was "mere speculation" because the levels of toxic substances in plaintiff's workplace were never actually measured. In quoting *McCuiston v. Addressograph-Multigraph Corp.*, 308 N.C. 665, 668, 303 S.E.2d 795, 797 (1983), a case in which our Supreme

CLARK v. ITT GRINNELL IND. PIPING, INC.

[141 N.C. App. 417 (2000)]

Court rejected the employer's argument that the employee must introduce evidence of the noise level to recover benefits for loss of hearing, our Supreme Court reiterated the unreasonableness of such a high standard of proof:

> "It is unreasonable to assume that the legislature intended an employee to bear the burden of making noise-level measurements during his employment in order to lay the groundwork for a worker's compensation claim. Such an interpretation of the statute would make it virtually impossible for an employee to successfully bring suit for compensation for a hearing loss, due to the difficulty he would encounter in attempting to make measurements of sound on his employer's premises. A construction of the statute which defeats its purpose—to provide a means by which employees can recover for injury due to harmful workplace noise—would be irrational and will not be adopted by this Court."

*Gay*, 79 N.C. App. at 333-34, 339 S.E.2d at 496 (citation omitted). In applying *Gay* and *McCuiston*, we conclude that a claimant need not introduce scientific evidence to prove his exposure to asbestos for the purposes of N.C.G.S. § 97-57.

We also note that less evidence than was presented in this case was specifically found to be sufficient in *Woodell v. Starr Davis Co.*, 77 N.C. App. 352, 335 S.E.2d 48 (1985). In *Woodell*, the plaintiff filed a workers' compensation asbestos claim against an insulation contractor and its insurance carrier. Like defendants' argument in our case, the defendants in *Woodell* contended that the evidence produced did not support the Commission's findings or conclusion that the plaintiff was injuriously exposed to asbestos. However, unlike plaintiff in our case, the plaintiff in *Woodell* was the *only* witness to testify that he worked with asbestos-containing pipes. The *Woodell* Court held this evidence to be sufficient. *Id.* at 357, 335 S.E.2d at 51.

In the case before us, plaintiff specifically testified that he wore asbestos gloves and that he would lay asbestos wrap over a pipe during stress relief operations on the floor. Plaintiff testified that the railroad bottom of the stress relief furnace, which carried asbestos, would be rolled near his work position. Andrews testified that he also wore asbestos gloves and saw white residue of asbestos on the pipe after the pipe came out of the furnace. Young also said he wore asbestos gloves. Moreover, he stated that he would prepare a pipe for the furnace by putting an asbestos wrap on it. Even Valentine, a wit-

ness for defendants and senior engineer at the plant, acknowledged that ITT Grinnell "probably used some form of asbestos wrap" before he arrived there in 1974. In addition, as discussed above, all three medical experts found that plaintiff's chest x-rays revealed conditions consistent with asbestos exposure. Because the Commission is the sole judge of the credibility of witnesses and the weight to be given their testimony, *Anderson v. Construction Co.*, 265 N.C. 431, 433-34, 144 S.E.2d 272, 274 (1965), we hold that there was competent evidence to support the Commission's finding that plaintiff was exposed to asbestos.

### III.

**[3]** Defendants next contend the Commission erred by applying the provisions of N.C. Gen. Stat. §§ 97-60 through -61.7 (1991 & Cum. Supp. 1998) in this case because there was no evidence that plaintiff was "engaged or about to engage in" an occupation that the Commission had found to expose employees to the hazards of asbestosis. In response, plaintiff contends we should not reach this issue because "it was not raised until after all the evidence had been submitted, the case had been decided by the Deputy Commissioner, and was on appeal before the Full Commission." However, it is the Commission's duty to consider every aspect of the claim whether before the hearing officer or on appeal to the Commission. *See Joyner v. Rocky Mount Mills*, 92 N.C. App. 478, 482, 374 S.E.2d 610, 613 (1988) ("[T]he 'full Commission' is not an appellate court in the sense that it reviews decisions of a trial court. It is the duty and responsibility of the full Commission to make detailed findings of fact and conclusions of law with respect to every aspect of the case before it."). Accordingly, the fact that this issue was not raised until it was reviewed by the Commission is of no consequence to our appellate review of the case. We thus turn to the merits of defendants' argument.

**[4]** Although the Workers' Compensation Act should be liberally construed, *see Hollman v. City of Raleigh*, 273 N.C. 240, 252, 159 S.E.2d 874, 882 (1968), " '[j]udges must interpret and apply statutes as they are written,' " *Andrews v. Nu-Woods, Inc.*, 299 N.C. 723, 726, 264 S.E.2d 99, 101 (1980) (alteration in original) (citation omitted), "ensur[ing] that the legislative intent is accomplished," *Radzisz v. Harley Davidson of Metrolina*, 346 N.C. 84, 88, 484 S.E.2d 566, 569 (1997) (citation omitted). Statutes should be reconciled with each other whenever possible, avoiding interpretations that would create conflicts between two or more statutes. *See Meyer v. Walls*, 122 N.C.

**CLARK v. ITT GRINNELL IND. PIPING, INC.**

[141 N.C. App. 417 (2000)]

App. 507, 512, 471 S.E.2d 422, 427 (1996), *aff'd in part, rev'd in part on other grounds,* 347 N.C. 97, 489 S.E.2d 880 (1997).

We begin this interpretation of the statutes by examining the plain words of the statutes. *See Electric Supply Co. v. Swain Electrical Co.,* 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991). The language on which defendants rely is derived from N.C. Gen. Stat. § 97-60 (Cum. Supp. 1998), which reads in pertinent part:

> The compulsory examination of employees and prospective employees as herein provided applies only to persons engaged or about to engage in an occupation which has been found by the Industrial Commission to expose them to the hazards of asbestosis and/or silicosis. . . . [I]t shall be the duty of every employer, in the conduct of whose business his employees or any of them are subjected to the hazard of asbestosis and/or silicosis, to provide prior to employment necessary examinations of all new employees for the purpose of ascertaining if any of them are in any degree affected by asbestosis and/or silicosis or peculiarly susceptible thereto; and every such employer shall from time to time, as ordered by the Industrial Commission, provide similar examinations for all of his employees whose employment exposes them to the hazards of asbestosis and/or silicosis.

By its very terms, N.C.G.S. § 97-60 establishes a requirement that certain employers (i.e., those found by the Commission to subject its employees to the hazards of asbestosis or silicosis) screen potential and current employees for any signs of asbestosis or asbestos-related disorders. N.C.G.S. § 97-60 is limited to "persons engaged or about to engage in" employment with an industry classified as a "dusty trade."

However, N.C.G.S. § 97-60 stands alone in its application; the employer's status (or lack thereof) as a "dusty trade" does not impact the application of the examination and compensation scheme set forth in N.C.G.S. §§ 97-61.1 through -61.7. The language in those sections refers to "an employee [who] has asbestosis or silicosis," N.C. Gen. Stat. § 97-61.1 (Cum. Supp. 1998), and speaks generally to "employers." Limiting the application of N.C.G.S. §§ 97-61.1 through -61.7 to employers designated as "dusty trades" would adversely affect the class of employees suffering from asbestosis or silicosis, thus thwarting the intent of the General Assembly to compensate employees who have contracted asbestosis.

Similarly, the language in N.C.G.S. § 97-60, "persons engaged or about to engage in," does not extend to N.C.G.S. §§ 97-61.1 through -61.7. The language of N.C.G.S. § 97-60 is more far-reaching than that used in N.C.G.S. §§ 97-61.1 through -61.7, in that N.C.G.S. § 97-60 requires screening of both current *and prospective* employees, whereas N.C.G.S. §§ 97-61.1 through -61.7 apply only to "employees."

We find support for our interpretation in N.C. Gen. Stat. § 97-72 (Cum. Supp. 1998), which sets forth as one of the specific statutory purposes for creation of the advisory medical committee "to conduct examinations and make reports as required by G.S. 97-61.1 through 97-61.6." (Emphasis added.) The General Assembly's omission of N.C.G.S. § 97-60 further suggests the exclusivity of that section.

Accordingly, we disagree with defendants' arguments in this regard and hold that an employer need not be designated a "dusty trade" for N.C.G.S. §§ 97-61.1 through -61.7 to apply. Likewise, the "engaged or about to engage in" language of N.C.G.S. § 97-60 does not carry over to the screening and reporting provisions of N.C.G.S. §§ 97-61.1 through -61.7.

**[5]** However, defendants also contend that "most importantly, the payment of one hundred four weeks of compensation is reserved to those employees who are *actually removed* from their employment." (Emphasis added.) This Court addressed the removal requirement in *Moore v. Standard Mineral Co.*, 122 N.C. App. 375, 469 S.E.2d 594 (1996).

> [T]he term "removal" as used by G.S. § 97-61.5 presumes medical diagnosis will occur *during* the hazardous employment. Thus, the language regarding "removal from the industry" has specific application only to occasions when . . . identified victims of occupational disease [] are thereafter "removed" from a hazardous industry by directive of the Commission. However, the phrase is inapposite to instances such as that *sub judice* wherein a claimant is diagnosed at some point *subsequent* to leaving hazardous employment.

*Id.* at 378, 469 S.E.2d at 596. An important distinction, however, is that in *Moore*, the defendant agreed that the plaintiff was entitled to benefits under N.C.G.S. § 97-61.5(b). For that reason,

> we emphasize[d] that the situation of a claimant no longer employed in any capacity at the time of diagnosis is not before us, and that legislative action to address such an instance may well

CLARK v. ITT GRINNELL IND. PIPING, INC.

[141 N.C. App. 417 (2000)]

be required to fulfill completely the intended purpose of compensating workers who have contracted occupational diseases.

*Id.* at 380, 469 S.E.2d at 598 (citation omitted). We believe, however, that a close reading of the statutes resolves the situation referred to in *Moore* and now presented to our Court.

The general rule for recovery for individuals suffering from asbestosis or asbestos-related disorders is found at N.C. Gen. Stat. § 97-64 (1991), which provides:

> Except as herein otherwise provided, in case of disablement or death from silicosis and/or asbestosis, compensation shall be payable in accordance with the provisions of the North Carolina Workers' Compensation Act.

The exceptions to which N.C.G.S. § 97-64 refers are found in N.C.G.S. §§ 97-61.1 through -61.7. N.C.G.S. §§ 97-61.1 through -61.4 establish a series of examinations by the Commission's advisory medical committee of "an employee [who] has asbestosis or silicosis" and reports to be made from those examinations. *Id.* § 97-61.1. After the first examination and report, *see id.* §§ 97-61.1, -61.2 (1991), N.C. Gen. Stat. § 97-61.5(b) (1991) mandates the following:

> If the Industrial Commission finds at the first hearing that the employee has either asbestosis or silicosis . . . it shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis or silicosis . . . ; provided, that *if the employee is removed from the industry* the employer shall pay or cause to be paid . . . to the employee affected by such asbestosis or silicosis a weekly compensation equal to sixty-six and two-thirds percent (66 2/3%) of his average weekly wages before removal from the industry . . . which compensation shall continue for a period of 104 weeks.

(Emphasis added.) N.C. Gen. Stat. § 97-61.6 (1991) then provides means for recovering additional partial or total disability and compensation for resulting death due to asbestosis or silicosis.

Looking solely at the language of N.C.G.S. § 97-61.5(b), it appears that recovery under this section requires that an employee be removed from the industry. However, the Act is to be construed *in para materia,* and N.C. Gen. Stat. § 97-61.7 (1991) aids in resolving the situation posed by the *Moore* Court. N.C.G.S. § 97-61.7 reads in pertinent part:

CLARK v. ITT GRINNELL IND. PIPING, INC.

[141 N.C. App. 417 (2000)]

An employee who has been compensated under the terms of G.S. 97-61.5(b) *as an alternative to forced change of occupation*, may, subject to the approval of the Industrial Commission, waive in writing his right to further compensation for any aggravation of his condition that may result from his continuing in an occupation exposing him to the hazards of asbestosis or silicosis, in which case payment of all compensation awarded previous to the date of the waiver . . . shall bar any further claims by the employee, . . . provided, that in the event of total disablement or death as a result of asbestosis or silicosis with which the employee was so affected, compensation shall nevertheless be payable, but in no case, whether for disability or death or both, for a longer period than 100 weeks *in addition to the 104 weeks already paid.*

(Emphasis added.) Construing the Workers' Compensation Act "liberally in favor of the injured worker," *Hicks v. Leviton Mfg. Co.*, 121 N.C. App. 453, 457, 466 S.E.2d 78, 81 (1996), which we are required to do, we read these sections together as evidencing the General Assembly's intent to allow an injured plaintiff to remain in the harmful work environment *and* receive the 104 weeks of compensation. Accordingly, contrary to defendants' argument, removal from the industry is not required for an employee to receive the 104 weeks of compensation.

This automatic compensation scheme satisfies the legislative purpose of providing "compensation to those workers affected with asbestosis or silicosis, whose principal need is compensation." *Young v. Whitehall Co.*, 229 N.C. 360, 365, 49 S.E.2d 797, 801 (1948).

Our reading of these statutes is further guided by earlier statements by our appellate courts. In *Roberts v. Southeastern Magnesia and Asbestos Co.*, our Court set forth the language of N.C.G.S. §§ 97-61.5(b) and -61.7 and stated:

It is clear from the language of these two statutes that a diagnosis of asbestosis . . . is the equivalent of a finding of actual disability. . . .

The Commission's award was predicated upon the employee avoiding further exposure to asbestos[] in his employment. We recognize that the intent of the Legislature in providing for an automatic 104 installment payments was to *encourage* employees to remove themselves from hazardous exposure to

asbestos and to provide for employee rehabilitation[.] We also recognize that G.S. 97-61.5(b) which authorizes this award, has as an *additional purpose* the compensation of employees for the incurable nature of the disease of asbestosis. There is no indication that the Legislature intended to prohibit any recovery whatsoever to those employees who refused to remove themselves from contact with asbestos after being diagnosed as having asbestosis. The statutory language merely prohibits recovery for actual partial incapacity if the employee, after receiving the initial compensation in the form of the 104 week installment payments, is shown to have remained in a job where he or she is exposed to asbestos.

61 N.C. App. 706, 710-11, 301 S.E.2d 742, 744-45 (1983) (emphasis added) (internal citations omitted). Our Court, in *Hicks*, 121 N.C. App. at 456, 466 S.E.2d at 81, quoted *Roberts* with approval and stated: "Thus, this Court has previously concluded that the Legislature intended compensation under G.S. § 97-61.5(b) as compensation for permanent damage to the employee's lungs due to asbestosis *as well as* for switching trades." (Emphasis added.)

Finally, we give deference to the Commission's determination in similar situations. *See Carpenter v. N.C. Dept. of Human Resources*, 107 N.C. App. 278, 279, 419 S.E.2d 582, 584 (1992) (stating that a reviewing court should defer to an agency's reasonable interpretation of a statute it administers). Our reading of the statutes is consistent with employers' and the Commission's long-standing practices of paying and awarding benefits, pursuant to N.C.G.S. § 97-61.5, to employees such as plaintiff. *See, e.g., Davis v. Weyerhaeuser Co.*, 132 N.C. App. 771, 514 S.E.2d 91 (1999) (plaintiff retired and then sought benefits for asbestosis; Commission awarded $20,000 for permanent injury to his lungs pursuant to N.C. Gen. Stat. § 97-31(24) and held that employer was not entitled to credit for payment of 104 weeks pursuant to N.C.G.S. § 97-61.5); *Stroud v. Caswell Center*, 124 N.C. App. 653, 478 S.E.2d 234 (1996) (awarding plaintiff, who retired in 1987 and filed claim in 1989, 104 weeks compensation pursuant to N.C.G.S. § 97-61.5 and $4,000 for permanent lung damage pursuant to N.C.G.S. § 97-31(24)); *Woodell v. Starr Davis*, 77 N.C. App. 352, 335 S.E.2d 48 (1985) (awarding 104 weeks compensation to plaintiff who retired in 1979 and filed claim in 1982); *Mabe v. Granite Corp.*, 15 N.C. App. 253, 189 S.E.2d 804 (1972) (defendant voluntarily paid 104 weeks compensation to plaintiff who had quit in 1968 and thereafter sought benefits).

Accordingly, we hold that an employee need not be "removed" from employment to be entitled to the 104 weeks compensation set forth in N.C.G.S. § 97-61.5. Defendants' assignments of error on this issue are overruled.

## IV.

**[6]** Defendants next argue that if N.C.G.S. § 97-60 and §§ 97-61.1 through -61.7 do apply to the parties in this case where they contend "plaintiff was not engaged or about to engage in an employment that exposed him to the hazards of asbestosis and was not otherwise forcibly removed from his occupation as a result of the asbestosis diagnosis, then the application of" those provisions violates defendants' right to equal protection of the law as guaranteed by the Constitutions of the United States and the state of North Carolina. Defendants contend that there are many other occupational diseases as serious as asbestosis and silicosis and by providing for an automatic 104 weeks of compensation for employees who suffer from asbestosis or silicosis but *not* so providing for employees with other occupational diseases makes these provisions "grossly underinclusive."

Defendants' argument is, in essence, that the under-inclusive nature of the asbestosis statutes somehow "places a disproportionate and unconstitutional burden on Defendants." In response, plaintiff contends that defendants have no standing to raise this issue.

We note that a similar constitutional challenge was made by the defendant-employer in *Jones v. Weyerhaeuser Co.*, No. COA99-742 (N.C. App. Dec. 29, 2000), where the defendant argued that N.C.G.S. § 97-61.5 denied its company equal protection because the statute treats employers with employees who are exposed to asbestos and silica differently than employers with employees who are not exposed to asbestos and silica. However, the defendant in *Jones* argued it sustained some monetary injury by application of N.C.G.S. § 97-61.5. *Id.*, slip op. at 4. ("[B]ecause [defendant's] business exposed its workers to asbestos, defendant is 'burdened with additional liability for workers compensation benefits, with which similarly situated employers' (whose businesses did not expose their workers to asbestos or silica) are not so burdened."). Conversely, neither defendant in the case before us alleges any disparate economic impact resulting from application of the asbestosis statutes. Thus, while in *Jones* the defendant's argument was "at best tenuous," *id.*, defendants' argument in this case is untenable. Nonetheless, we

CLARK v. ITT GRINNELL IND. PIPING, INC.

[141 N.C. App. 417 (2000)]

upheld the constitutionality of N.C.G.S. § 97-61.5 in *Jones* and we rely upon the language set forth therein to now overrule defendants' constitutional challenge to N.C.G.S. §§ 97-60 and -61.1 through -61.7. This assignment of error is overruled.

V.

**[7]** Finally, defendants contend the Commission erred in calculating plaintiff's "average weekly wage" in awarding compensation. As to plaintiff's average weekly wage, the Commission found:

> 3. As of the last date of employment with Defendant/ employer, Plaintiff earned $24,899.10 in his last full year of employment, his applicable average weekly wage being $478.83, which yields a workers' compensation rate of $319.38.

Based upon this finding and citing N.C.G.S. §§ 97-57 and 97-61.5, the Commission concluded:

> 4. The defendant/carrier Liberty Mutual was on the risk at the time of Plaintiff's last injurious exposure and is, therefore, liable for payment of compensation due Plaintiff pursuant to the Act.

> 5. As a result of his contraction of asbestosis, Plaintiff is entitled to receive weekly compensation at the rate of $319.38 per week for a period of 104 weeks . . . .

Defendants contend plaintiff's compensation rate should have been calculated based upon the year of his "last injurious exposure," citing N.C. Gen. Stat. § 97-54 (1991), which defines "disablement." However, compensation under N.C.G.S. §§ 97-61.1 through -61.7 is unrelated to actual disablement. N.C.G.S. § 97-61.5(b) provides that

> the employer shall pay or cause to be paid as in this subsection provided to the employee *affected by* such asbestosis or silicosis a weekly compensation equal to sixty-six and two-thirds percent (66 2/3%) of his *average weekly wages* before removal from the industry, but not more than the amount established annually to be effective October 1 as provided in G.S. 97-29 or less than thirty dollars ($30.00) a week . . . .

(Emphasis added.) "Average weekly wage" is defined as:

> [1.] [T]he earnings of the injured employee in the employment in which he was working at the time of the injury during the period

of 52 weeks immediately preceding the date of the injury . . . ; provided, results fair and just to both parties will be thereby obtained. . . .

[5.] But where for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

N.C. Gen. Stat. § 97-2(5) (Cum. Supp. 1998). There is no requirement of actual disablement in the asbestosis statutes, and defendants' contention must fail. Nonetheless, we find the Commission's findings deficient on the issue of plaintiff's average weekly wage.

N.C.G.S. § 97-2(5) " 'provides a hierarchy' of five methods of computing the average weekly wages." *McAninch v. Buncombe County Schools*, 347 N.C. 126, 130, 489 S.E.2d 375, 378 (1997). Accordingly, if the first method prescribed would be "fair and just," it is the method to be employed. "The final method, as set forth in the last sentence, clearly may not be used unless there has been a finding that unjust results would occur by using the previously enumerated methods." *Id.* (citation omitted).

Our Court addressed the applicability of the first method to facts similar to those now presented in *Moore*, 122 N.C. App. 375, 469 S.E.2d 594. The parties in *Moore* entered into an agreement whereby the employer and insurance company agreed to compensate the employee, pursuant to N.C.G.S. § 97-61.5(b), for 104 weeks of compensation at the rate of $62.01 per week (sixty-six and two-thirds percent of the plaintiff's average weekly wage earned during his last year of employment with the defendant-employer). The agreement was contingent on "a determination by the Commission as to whether the appropriate rate had been paid." *Id.* at 376, 469 S.E.2d at 595. The Commission adopted the deputy commissioner's opinion and award, which had set the plaintiff's weekly compensation rate at $263.42 (or sixty-six and two-thirds percent of his average weekly wage earned during the fifty-two weeks prior to diagnosis of silicosis).

On appeal to this Court, the defendants in *Moore* argued "that the average weekly wage governing compensation is that which the employee was receiving 'before removal from the industry' within which silicosis was contracted." *Id.* at 377, 469 S.E.2d at 596. Conversely, the plaintiff contended that the "date of the injury,"

**CLARK v. ITT GRINNELL IND. PIPING, INC.**

[141 N.C. App. 417 (2000)]

N.C.G.S. § 97-2(5), was the time of diagnosis, thus mandating that "compensation [] be calculated based upon his wages 'during the period of 52 weeks immediately preceding the date' of diagnosis," *Moore*, 122 N.C. App. at 377, 469 S.E.2d at 596. We agreed with the plaintiff's argument and held that, for purposes of calculating the average weekly wages (pursuant to the first method set out in N.C.G.S. § 97-2(5)) of a claimant who is diagnosed with asbestosis or silicosis *subsequent to* leaving his employment, the "date of the injury" is the time of diagnosis. *Id.* at 379, 469 S.E.2d at 597 (citation omitted).

In the case before us, the Commission, without explanation, found as fact that plaintiff's average weekly wage should be calculated by looking to his last full year of employment with defendant-employer. It then concluded that such payment should "commenc[e] as of November 4, 1991," the date on which plaintiff was examined by the Commission's Advisory Medical Committee.

Without any findings regarding the "fair and just" method for calculating plaintiff's average weekly wage, we must assume that the Commission was attempting to rely upon the first method set forth in N.C.G.S. § 97-2(5). However, as previously discussed, that method requires looking at the plaintiff's employment immediately preceding diagnosis for calculating his average weekly wage. *See Moore*, 122 N.C. App. 375, 469 S.E.2d 594. Accordingly, we find that the Commission's findings are insufficient to support its conclusion that "Plaintiff is entitled to receive weekly compensation at the rate of $319.38 per week for a period of 104 weeks." We therefore remand to the Commission the issue of calculation of plaintiff's average weekly wage and his resulting benefits.

Affirmed in part, remanded in part.

Judges HORTON and EDMUNDS concur.