***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Jones, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act, as defendant Weyerhaeuser Company employs the requisite number of employees to be bound under the provisions of the act.
2. Defendant is self insured.
3. Plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from June 3, 1953, until August 31, 1997.
4. Plaintiff was last injuriously exposed to asbestos during plaintiff's employment with defendant. Plaintiff was exposed to asbestos for thirty (30) days within a seven (7) month period, as set forth in N.C. Gen. Stat. § 97-57.
5. Defendant manufactures paper and paper products, including paper for crafts, bags, boxes, and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is 3/4 of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960s and the vast majority of the insulation used in the original construction of the buildings contained asbestos. Steam-producing boilers are used at the facility, along with hundreds of miles of steam pipes covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
6. It was stipulated that plaintiff's income for the fifty-two (52) weeks prior to his retirement was $68,103.27. It is further stipulated that plaintiff's date of diagnosis is December 8, 1999.
7. Plaintiff contends that he is entitled to an award of a 10% penalty pursuant to the provisions of N.C. Gen. Stat. § 97-12, and defendant stipulated that should the claim be found compensable, defendant would agree by compromise to pay an amount of 5% of all compensation, exclusive of medical compensation, as an award of penalty pursuant thereto.
8. Should N.C. Gen. Stat. §§ 97-60 through 97-61.7 be declared unconstitutional, plaintiff may offer additional testimony on the issues of loss of wage earning capacity and/or disability.
9. The transcript of Joseph Wendlick's testimony at civil trial, his curriculum vitae, and other documentation produced by defendant in discovery, has been stipulated into evidence as Stipulated Exhibit 2.
10. The relevant medical records of plaintiff, including documentation from Drs. Garland, Proctor, Dula, Bernstein, Rao, Bouzigard, and Weaver, have been stipulated into evidence as Stipulated Exhibit 1.
11. The employment and income records of plaintiff have been stipulated into evidence as Stipulated Exhibit 3.
12. Defendant stipulates that all the procedures used in Weyerhaeuser's asbestos medical surveillance program at its facility in Plymouth, North Carolina, were consistent with those outlined as part of the North Carolina Dusty Trades Program that is contained in N.C. Gen. Stat. §§97-60 through 97-61.7. Further, these procedures were in place during plaintiff's employment at the Plymouth facility.
13. Defendant stipulates that the medical monitoring procedures used in its asbestos medical surveillance program were the same in all Weyerhaeuser plants in the State of North Carolina.
14. Defendant stipulates that the Weyerhaeuser facilities that Mr. Joseph Wendlick referred to in his deposition transcript, which has been stipulated into evidence, included the facilities in North Carolina.
15. Plaintiff contends the contested issues before the Commission are:
 (a) Does plaintiff suffer from a compensable asbestos-related occupational disease and/or diseases? If so, what disease and/or diseases?
 (b) What benefits, monetary and/or medical, is plaintiff entitled to receive, if any, at this time?
 (c) Is plaintiff entitled to the additional panel examination(s) as provided by in N.C. Gen. Stat. § 97-61.3 et seq., to determine what, if any, final compensation he may be due?
 (d) Whether plaintiff shall be entitled to attorney's fees for the unreasonable defense of this matter?
16. Defendant contends the contested issues before the Commission are:
 (a) Does plaintiff suffer from a compensable asbestos-related occupational disease and/or diseases? If so, what disease and/or diseases?
 (b) What benefits, monetary and/or medical, is plaintiff entitled to receive, if any, at this time?
 (c) Does N.C. Gen. Stat. §§ 97-60 through 97-61.7 apply to plaintiff's claim for benefits, and regardless, are these statutes in violation of the Constitutions of the United States and North Carolina?
 (d) Is plaintiff engaged in an occupation that has been found by the Industrial Commission to expose employees to the hazards of asbestosis under the provisions of N.C. Gen. Stat. §§ 97-60
through 97-61.7?
 (e) At the time of the diagnosis, was plaintiff subject to removal from an occupation that exposed plaintiff to the hazards of asbestosis, as contemplated by N.C. Gen. Stat. §§ 97-60 through 97-61.7?
 *********** EVIDENTIARY RULINGS
Defendant, in his brief to the Deputy Commissioner, raised the issue of the parties' failure to take the deposition of Jeffrey Garland, M.D. The Deputy Commissioner had given the parties through June 11, 2001, to take Dr. Garland's deposition and file briefs. Defendant elected not to depose Dr. Garland in this case.
The objections raised in the depositions of Frederick M. Dula, Jr., M.D.; Stephen D. Proctor, M.D.; and Michael D. Weaver, M.D, are overruled.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was an employee with defendant at its Plymouth, North Carolina, facility from June 3, 1953, until August 31, 1997.
2. Plaintiff was exposed to asbestos dust from a variety of sources at defendant's facility in Plymouth, North Carolina. Plaintiff worked on the paper machines and was exposed to asbestos dust from the brake pads and brake shoes on the winders. He would use compressed air to blow the asbestos dust off the brake pads. Plaintiff was exposed to asbestos dust from the large dryer felts that he had to help change out. Additionally, plaintiff was exposed to asbestos in the boiler room while punching spouts in boilers insulated with asbestos and while oiling steam pipes wrapped in asbestos. Plaintiff would also use chain falls over asbestos-insulated pipes, which would cause the air to become foggy. The pipes were still insulated with asbestos when he stopped working for defendant in 1997. Defendant did not provide plaintiff with a respirator for protection against asbestos exposure.
3. Plaintiff was exposed to asbestos-containing materials on a regular basis for more than thirty days or parts thereof inside of seven consecutive months from 1953 until 1997.
4. Stephen Proctor, M.D., diagnosed plaintiff with asbestosis on December 8, 1999. Dr. Proctor's diagnosis was based upon plaintiff's history of asbestos exposure and adequate latency period, his chest x-rays, and a CT scan showing mild bilateral increased interstitial markings and mild bilateral pleural thickening, bilateral lung crackles, and dyspnea on exertion. Further, Dr. Proctor confirmed his diagnosis of asbestosis during his live deposition on March 2, 2000.
5. Jeffrey Garland, M.D., performed the Advisory Medical Evaluation and determined that plaintiff had a very large exposure history and mild interstitial lung abnormalities on chest x-ray and CT scan. It was his overall impression, and the Full Commission finds as fact, that such findings are consistent with a diagnosis of mild asbestosis.
6. Richard Bernstein, M.D., interpreted a chest x-ray dated December 8, 1999, and determined, and the Full Commission finds as fact, there were increased interstitial markings present that, with the proper exposure history and latency, are consistent with pneumoconiosis of asbestosis.
7. Fred Dula, M.D., interpreted a CT scan and chest x-ray dated July 19, 1997, as well as a follow up CT scan and chest x-ray dated December 8, 1999. Based upon his review of all these radiographs, Dr. Dula determined there were interstitial and pleural changes in plaintiff's lung bases consistent with asbestosis. Dr. Dula testified during his live deposition on April 24, 2001, that his radiographic findings on these chest films were entirely consistent with asbestosis. Dr. Dula also testified that asbestosis is a progressive disease.
8. Michael Weaver, M.D., interpreted a chest x-ray performed on plaintiff on May 16, 1989, through defendant's medical monitoring program. On this chest x-ray, which was over ten years old, Dr. Weaver found, and the Full Commission finds as fact, parenchymal and pleural abnormalities consistent with pneumoconiosis of asbestosis. Dr. Weaver confirmed these findings during his live deposition on April 6, 2001, and testified that asbestosis tends to be a progressive disease.
9. Ray Bouzigard, M.D., interpreted a chest x-ray performed on plaintiff on June 23, 1988, through defendant's medical monitoring program. On this ten year old chest x-ray, Dr. Bouzigard found, and the Full Commission finds as fact, parenchymal changes consistent with pneumoconiosis of asbestosis.
10. L. C. Rao, M.D., interpreted a chest x-ray dated December 8, 1999, and found irregular opacities present in the lower and middle lung zones. He concluded, and the Full Commission finds as fact, that in the presence of a significant occupational exposure history to asbestos dust, these findings are consistent with the diagnosis of bilateral interstitial fibrosis due to asbestosis.
11. Plaintiff developed asbestosis as a result of his employment with defendant, which placed him at an increased risk of developing asbestos as compared to members of the general public.
12. Plaintiff also suffers from asbestos-related pleural disease and his employment with defendant placed him at an increased risk of developing the disease as compared to members of the general public.
13. Plaintiff was last injuriously exposed to asbestos while employed by defendant and developed the occupational diseases of asbestosis and asbestos-related pleural disease as a result of his many years of exposure to asbestos at defendant's facility.
14. Plaintiff's pulmonary impairment is permanent and is likely to progress. Plaintiff would benefit from medical monitoring, evaluation and some treatment in the future as a result of his asbestosis and asbestos-related pleural disease. Further, the medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos-related cancers.
15. Plaintiff would benefit from medical monitoring, evaluation, and some treatment in the future for his asbestosis and asbestos-related pleural disease.
16. Defendant's Plymouth facility was found to have high levels of friable asbestos dust by their own Industrial Hygienist, Joseph Wendlick. As a result of Mr. Wendlick's findings, an asbestos medical monitoring program was initiated to comply with the dusty trade provisions of the N.C. Gen. Stat. §§ 97-60 through 97-61.7.
17. Plaintiff's income for the fifty-two (52) weeks prior to his retirement in 1997 was $68,103.27, which is sufficient to produce the maximum weekly compensation rate for 1997, $512.00.
18. The lung is an important organ and plaintiff has sustained injury to both his right and left lung as a consequence of his direct exposure to asbestos during his employment with defendant.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Prior to his retirement, plaintiff contracted the occupational diseases of asbestosis and asbestos-related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. §§ 97-53(24) and97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. It has been determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure. See Austin v. General Tire, 354 N.C. 344, 553 S.E.2d 680
(2001).
4. Having contracted asbestosis, plaintiff would be entitled to recover weekly compensation at the rate of $512.00, for each week that he is unable to earn wages by reason of his occupational disease. However, there is no showing that plaintiff has been unable to earn wages by reason of his occupational disease.
5. Plaintiff is entitled to compensation in the amount of $20,000.00 for the permanent injury to each lung, due to his occupational disease of asbestosis. N.C. Gen. Stat. § 97-31(24).
6. Plaintiff is entitled to have defendant pay for such medical expenses incurred or to be incurred as a result of plaintiff's asbestos-related pleural disease and asbestosis as may be required to monitor, provide relief, effect a cure, or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-25, and 97-59.
7. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§ 97-61.1, etseq., and is further entitled to any additional benefits due to plaintiff, which shall be determined after additional examinations and hearings.
8. Defendant stipulated that, should the Industrial Commission determine that plaintiff contracted the occupational disease asbestosis during the course and scope of his employment with defendant, defendant would waive further proof needed under N.C. Gen. Stat. § 97-12 (that the injury is caused by the willful failure of the employer to comply with any statutory requirement) and, in compromise of this issue, would accept a 5% penalty against all compensation due other than medical compensation. The Industrial Commission has so determined and defendant's offer of a compromise 5% penalty is deemed appropriate.
9. The issue of the constitutionality of N.G. Gen. Stat. §§ 97-60 etseq., has been raised by defendant and ruled upon by the North Carolina Court of Appeals. In Jones v. Weyerhaeuser Co., 141 N.C. App. 482,539 S.E.2d 380 (2000), disc. review denied, 353 N.C. 525, 549 S.E.2d 858
(2001), and in Clark v. ITT Grinnell Industrial Piping, Inc.,141 N.C. App. 417, 539 S.E.2d 369 (2000), the Court ruled unanimously that the provisions of N.C. Gen. Stat. § 97-61.5 are constitutional.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to attorney's fees hereafter provided, defendants shall pay to plaintiff $20,000.00 for the permanent injury of an important organ, his right lung, and $20,000.00 for the permanent injury of his left lung, both injuries caused by asbestosis and asbestos-related pleural disease. Compensation due that has accrued shall be paid in a lump sum, subject to the attorney's fees hereinafter provided.
2. Defendant shall pay an additional sum of 5% of the compensation awarded in paragraph 1 above to plaintiff, which shall also be paid in a lump sum. As per agreement of the parties, defendant shall also pay a 10% late penalty pursuant to N.C. Gen. Stat. § 97-18.
3. Defendant additionally shall pay interest in the amount of 8% per annum on this award from the date of the initial hearing on this claim, February 14, 2001, until paid in full. The interest shall be paid in full to the claimant and is not subject to attorneys' fees. N.C. Gen. Stat. § 97-86.2.
4. Defendant shall pay all medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
5. Plaintiff shall undergo additional examinations as provided by law.
6. A reasonable attorney's fee of 25% of the compensation due plaintiff as was awarded in paragraph 1 above is approved for plaintiff's counsel. Defendant shall deduct 25% of the lump sum otherwise due plaintiff shall pay such 25% directly to plaintiff's counsel.
7. The Commission hereby retains jurisdiction in this matter to address the issue of permanent impairment, as plaintiff has not undergone the additional panel examination as required by law for such determination. Upon completion of such examinations, should the parties be unable to agree on what additional compensation, if any, is due, the parties may request a hearing before this Commission on this matter.
8. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing, if necessary, following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further indemnity compensation under the Act beyond that awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
This 23rd day of October, 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING IN PART AND DISSENTING IN PART:
 S/_______________ DIANNE C. SELLERS COMMISSIONER