***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of former Deputy Commissioner Jones, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured.
3. An employee-employer relationship existed between the parties at all relevant times. Plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from August 11, 1972, to the present.
4. The plaintiff was last injuriously exposed to asbestos during the plaintiff s employment with defendant and specifically, the plaintiff was exposed to asbestos for thirty (30) days within a seven month period, as set forth in Gen. Stat. § 97-57.
5. Defendant stipulated that plaintiff does suffer from an occupational disease, asbestosis, and further that he was diagnosed with asbestosis on December 7, 1997, by Dr. Dennis Darcey. Defendant further agrees that a member of the North Carolina Occupational Disease Panel confirmed this diagnosis, and these medical records will be stipulated into evidence for consideration by the Industrial Commission.
6. The plaintiff's income for the fifty-two (52) weeks prior to his diagnosis of asbestosis was $67,487.01, which was sufficient to justify the maximum rate allowable under the North Carolina Workers' Compensation Act for the diagnosing year of 1997, which is $512.00. Defendant stipulated before the Full Commission that plaintiff's income during the 52 weeks prior to the Deputy Commissioner's order of removal was sufficient to justify the maximum rate allowable for-the-year 2000 of $588.00.
7. Plaintiff contends that he is entitled to an award of ten percent (10%) penalty pursuant to the provisions of N. G. Gen. Statute § 97-12, and defendant stipulated that should the claim be found compensable, defendant would agree by compromise to pay an amount of 5% of all compensation, exclusive of medical compensation, as an award of penalty pursuant thereto.
8. The parties agreed further that should plaintiff be awarded compensation, the Industrial Commission may include language removing the plaintiff from further exposure pursuant to N.C. Gen. Statute §97-61.5(b).
9. The parties further agreed that should the Industrial Commission determine N.C. Gen. Statute §§ 97-60 through 97-61.7 to be unconstitutional, additional testimony could be offered by the parties on the issues of loss of wage earning capacity and/or disability.
10. The issues raised by the parties before the Deputy Commissioner were:
 a. Does N.C. Gen. Stat. §§ 97-60 through 97-61.7 apply to plaintiffs claim for benefits, and regardless, are these statutes in violation of the Constitutions of the United States and North Carolina?
b. What benefits is the plaintiff entitled to receive, if any?
11. The medical records by the following physicians were introduced into evidence without objection by the parties:
a. Dr. Dennis Darcey
b. Dr. Fred M. Dula
c. Dr. Allen Hayes
d. Dr. James Johnson
e. Dr. Phillip Lucas
f. Dr. Michael J. Dimeo
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff has been employed by defendant, Weyerhaeuser Company, at its facility in Plymouth, North Carolina, from August 11, 1972, to the date of the hearing before the Deputy Commissioner and continuing.
2. Plaintiff received substantial exposure to the hazards of asbestos in differing occupations throughout his employment with defendant.
3. Plaintiff was employed in various positions while working for defendant. Initially, plaintiff worked as a paper machine operator and then in the wood yard. Plaintiff eventually worked as a clerk in the storeroom and as a maintenance clerk. Throughout his employment, he was exposed to friable asbestos at various places throughout the plant and he inhaled friable asbestos.
4. Plaintiff was exposed to asbestos while working in the boiler room. The insulation on piping throughout the boiler room contained asbestos. Plaintiff removed and ground asbestos gaskets using a wire brush. Grinding of the asbestos gaskets released asbestos fibers that plaintiff inhaled. There were also manholes covered with asbestos that the plaintiff was exposed to while working in the boiler room. Additionally, plaintiff was exposed to asbestos when he used the hanging chain falls to climb to the top rungs of the piping in the boiler room. The chain falls would cut through the asbestos and cause it to fall from the pipes, releasing asbestos fibers, which plaintiff inhaled.
5. Defendant did not provide any respiratory equipment to protect plaintiff against exposure to asbestos. The air in the workplace was dusty with friable asbestos fibers and plaintiffs clothes at times would be covered with particles from asbestos insulation.
6. Plaintiff was exposed to asbestos materials on a regular basis for more than thirty working days or parts thereof inside of seven consecutive months from 1972 until his case was heard on October 12, 1999.
7. Defendant admitted that plaintiff does suffer from asbestosis, an occupational disease under the North Carolina Workers' Compensation Act.
8. The following medical records confirming the diagnosis of asbestosis and asbestos related pleural disease, as well as injurious exposures, were submitted to the Industrial Commission by counsel for the parties. The Full Commission finds the facts and opinions stated therein to be credible and competent by the greater weight of the medical evidence and adopts them as findings of fact:
 A. The medical report of Dr. Dennis Darcey of the Division of Occupational Environmental Medicine of Duke University, dated December 7, 1997. Dr. Darcey took an occupational history from plaintiff, who stated he began working for Weyerhaeuser in 1972 and has worked in the maintenance department for the last 20 years. In his work plaintiff came into contact with asbestos insulation in the boiler room where he occasionally removed asbestos insulation from the valves and boilers. He also worked in areas where other employees were ripping out asbestos insulation during construction and repair projects. Plaintiffs history also included being exposed to dust generated by grinding off asbestos gaskets from pipes. He reported that he did not wear a respirator. He also told Dr. Darcey that he had smoked approximately one pack per day for a period of 3 to 4 years, but quit smoking at age 22.
 B. Dr. Darcey rendered an opinion, and the Full Commission finds as fact, that plaintiff suffers from asbestosis and asbestos related pleural changes. Dr. Darcey's conclusion was based on the history of exposure to asbestos with adequate latency to develop asbestosis and an ILO chest x-ray and B-read and high resolution CT scan of the chest showing pleural plaque and interstitial changes consistent with asbestosis. Dr. Darcey assigned a respiratory impairment rating of Class 2 based on the AMA guidelines.
 C. Dr. Darcey, as part of his report, recommended that the plaintiff undergo annual monitoring for progression of asbestos related disease including pulmonary function and chest x-ray. He further recommended that plaintiff should avoid further exposure to asbestos dust. Finally, in addition to plaintiff's increased risk of developing asbestosis, plaintiff was and remains at an increased risk of developing lung cancer and mesothelioma, as opposed to non-exposed individuals. Dr. Darcey recommended that plaintiff undergo regular medical monitoring.
 D. A CT scan and chest x-ray dated August 22, 1997, was interpreted by Dr. Fred M. Dula of Piedmont Radiology in Salisbury, a radiologist and B-reader. It was the opinion of Dr. Dula that there is mild, diffuse-type pleural thickening and interstitial changes seen in a few locations including short, thickened interlobar lines extending to the pleural surfaces in the non-dependent portions of both lung bases on the CT scan. He further states that there is bilateral pleural thickening and interstitial changes seen in the lung bases, consisting of irregular linear opacities on the chest x-ray. It was his overall impression that both the CT scan and chest x-ray showed mild interstitial and pleural changes consistent with mild asbestosis given a history of asbestos exposure.
 E. It was the opinion of Dr. Phillip H. Lucas, a NIOSH B-reader who also evaluated the same chest film, that there were present bilateral pleural and interstitial fibrotic changes consistent with asbestosis in a patient who has had an adequate exposure history and latency period.
 F. Dr. Allen Hayes of Raleigh Internal Medicine also reviewed the August 22, 1997, chest film and indicated that there existed parenchymal and pleural abnormalities consistent with pneumoconiosis.
 G. Dr. James Johnson of Piedmont Radiology in Salisbury, a 13-reader, reviewed the chest x-ray and concluded there were both parenchymal and pleural changes present consistent with a pneumoconiosis.
 H. On January 25, 1999, the plaintiff was examined by Dr. Michael J. DiMeo, a member of the North Carolina Occupational Disease Panel. The plaintiff advised Dr. DiMeo that he had smoked for 4 or 5 years but discontinued this habit in 1970. He told him that he worked for defendant for 26 years in maintenance. When he first started, he was a millwright and was exposed once a week for approximately 4 hours on average to "white insulation that covered pipes and valves." He also reported that he was involved with cutting and drilling and occasionally resurfaced pipes and valves. Additionally, he was exposed without respiratory protection. However, he was rarely involved in the maintenance of boilers. Plaintiff reported that over the years, his exposure to the white insulation has reduced.
 I. In the etiology section of his report on the plaintiff, Dr. DiMeo stated that the plaintiffs pleural thickening was very likely secondary to asbestos exposure, and the plaintiff suffers from interstitial disease. Dr. DiMeo also recommended a complete pulmonary function test to document progression, and monitoring of the plaintiff through yearly chest x-rays and diffusing capacity along with spirometry.
 J. Dr. DiMeo further stated that he would place the plaintiff in AMA Class Two, or about 15 % total body impaired.
9. The Full Commission further finds the following additional facts by the greater weight of the evidence:
 A. Defendant admitted that plaintiff is suffering from asbestosis, an occupational disease. and that he was diagnosed with asbestosis and asbestos related pleural plaques while still employed by defendant. This admission is supported by the above-referenced medical records and reports submitted into the record without objection.
 B. Plaintiffs pulmonary impairment due to his asbestosis is permanent and is likely to progress. Plaintiff would benefit from medical monitoring, evaluation, and some treatment in the future as a result of his asbestosis and his asbestos related pleural disease. Further, the medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos related cancers.
 C. Plaintiffs wages for 1997 were $67,487.01. The plaintiffs average weekly wage was sufficient to entitle the plaintiff to the maximum workers' compensation rate of $588.00, the rate at the time the plaintiff was removed by Order dated January, 13, 2000.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. § 97-53(24) and § 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57 Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000): Havnes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks." Accordingly, the Commission hereby issues an Order of Removal. Id. The Order of Removal does not constitute an order removing plaintiff from his employment with defendant, but plaintiff is ordered removed from any occupational exposure to asbestos for the remainder of his employment.
4. While it has been determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure, see Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001), in this case plaintiff remains in defendant's employ. It has long been recognized that the purpose of the order of removal is not only to stop continuing exposure of the employee to asbestos fibers, but also to ensure that the employee who continues to work avoids any future exposure. See Roberts v. Southeastern Magnesia andAsbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983). It has also long been recognized that the award of 104 weeks of compensation has the additional purpose to compensate the employee for the incurable nature of the disease. Honeycutt v. Carolina Asbestos Co., 235 N.C. 471,70 S.E.2d 426 (1952).
5. Pursuant to N.C. Gen. Stat. § 97-61.5, the weekly amount of plaintiffs 104 weeks of compensation is to be based upon his "average weekly wages before removal from the industry, but no more than the amount established annually to be effective October 1 as provided in G.S. § 97-29. . . ." The parties have stipulated that plaintiffs wages were sufficient to entitle him to the maximum compensation rate permitted under the Act for the year 2000. Therefore, plaintiff is entitled to 104 weeks of compensation as a result of his diagnosis of asbestosis at the weekly benefit rate of $588.00. N.C. Gen. Stat. §97-61.5; Roberts v. Southeastern Magnesia and Asbestos Co.,61 N.C. App. 706, 301 S.E.2d 742 (1983).
6. The issue of the constitutionality of N.G. Gen. Stat. §§ 97-60et seq., has been raised by defendant and ruled upon by the North Carolina Court of Appeals. In Jones v. Weyerhaeuser Co., 141 N.C. App. 482,539 S.E.2d 380 (2000), disc. review denied, 353 N.C. 525, 549 S.E.2d 858
(2001), and in Clark v. HT Grinnell Industrial Piping, Inc.,141 N.C. App. 417, 539 S.E.2d 369 (2000), the Court ruled unanimously that the provisions of N.C. Gen. Stat. § 97-61.5 are constitutional.
7. Plaintiff is entitled to have defendant pay for such medical expenses incurred or to be incurred as a result of plaintiffs asbestos related pleural disease and asbestosis as may be required to monitor, provide relief, effect a cure or lessen plaintiffs period of disability. N.C. Gen. Stat. §§ 97-25, and 97-59.
8. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§97-61.1, et seq., and is further entitled to any additional benefits due to plaintiff, which shall be determined after additional examinations and hearings.
 *********** ORDER OF REMOVAL
Plaintiff is hereby ordered to be removed from any occupation that further exposes him to the hazards of asbestos. N.C. Gen. Stat. §97-61.5(b).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendant shall pay to plaintiff compensation for 104 weeks as a result of his contraction of asbestosis, and asbestos related pleural disease while employed by defendant, at a week rate of $588.00, commencing on December 9, 1997. Said sum shall be paid in a lump sum to plaintiff without commutation, subject to the attorney's fee approved herein.
2. Defendant shall pay an additional weekly sum of $25.00 of the weekly compensation awarded in Paragraph 1 above to plaintiff, which shall also be paid in a lump sum. As to any future weekly compensation or other compensation due, the defendant shall increase the amount of such weekly compensation and/or lump sum compensation awarded, by 5%. As per agreement of the parties, defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
3. Defendant additionally shall pay interest in the amount of 8% per annum on this award from the date of the initial hearing on this claim, January 13, 2000, until paid in full. The interest shall be paid in full to the claimant and is subject to attorneys' fees. N.C. Gen. Stat. §97-86.2.
4. Defendant shall pay all medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
5. Plaintiff shall undergo additional examinations as provided by law.
6. A reasonable attorney's fee of 25% of the compensation due plaintiff as was awarded in paragraphs 1 and 2 above is approved for plaintiffs counsel. Twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to his counsel.
7. The Commission hereby retains jurisdiction in this matter to address the issue of permanent impairment, as plaintiff has not undergone the additional panel examination as required by law for such determination. Upon completion of such examinations, should the parties be unable to agree on what additional compensation, if any, is due, the parties may request a hearing before this Commission on this matter.
8. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing, if necessary, following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded. Herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
This the 4th day of October 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/__________________ BERNADINE S. BALANCE COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER