***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Hearing Agreement signed by the parties and received by the Commission on 8 March 2000 in lieu of a hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Decedent was employed by defendant at its facility in Plymouth, North Carolina, from 12 December 1967 up to and including the date of the hearing before the Deputy Commissioner. Decedent began taking a temporary sick leave beginning 1 January 2000, but intended to return to work for defendant.
3. Defendant was self-insured during the time of decedent's employment with defendant.
4. Decedent was last injuriously exposed to asbestos during his employment with defendant. Decedent was exposed to asbestos for 30 working days within a seven month period as required by N.C. Gen. Stat. § 97-57.
5. Defendant manufactures paper and paper products such as paper for crafts, paper bags, boxes and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960's and the vast majority of the insulation used in the original construction of the buildings contained asbestos. There are steam producing boilers used at the facility in Plymouth, North Carolina. In addition, there are hundreds of miles of steam pipes which were covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
6. Decedent worked for 31 years as an insulator, boiler worker and masonry worker. He was exposed to large amounts of dust from asbestos insulation on a daily basis. As part of his job duties, he would cut and crush sheets of asbestos insulation. He did not use any respiratory protection against his exposure to asbestos. While working with the boilers he was frequently exposed to large amounts of airborne dust from insulation in a confined area, particularly in the first 15 years of his employment.
7. Decedent does suffer from the occupational disease, asbestosis. He was diagnosed with asbestosis on 26 April 1999 by Dr. Albert Curseen. Defendant agrees that decedent has asbestosis.
8. By separate stipulation signed by counsel for both parties on 13 August 2002, it is stipulated that decedent's wages were sufficient to earn the maximum compensation benefits available under the North Carolina Workers' Compensation Act in the year 2000, which was $588.00.
9. Should N.C. Gen. Stat. § 97-60 through § 97-61.7 be declared unconstitutional, additional testimony may be offered by the parties on the issues of loss of wage earning capacity and/or disability.
10. Should decedent's claim be found compensable, the Deputy Commissioner may include in his Opinion and Award the following language:
 The parties have resolved decedent's claim for an award of a 10% penalty pursuant to G.S. § 97-12 on a compromise basis. Pursuant to the agreement of the parties, defendant shall pay to plaintiff, in addition to the compensation awarded herein, an additional 5% of all such compensation, with the exception of medical compensation pursuant to G.S. § 97-25. As to compensation ordered paid to plaintiff in a lump sum, defendant shall pay an additional 5% of any such lump sum. As to any weekly compensation awarded plaintiff, defendant shall increase the amount of such weekly compensation by 5%. Defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
11. Should decedent be awarded compensation pursuant N.C. Gen. Stat. § 97-61.5(b), the Deputy Commissioner may include in the Opinion and Award language removing decedent from further exposure pursuant to N.C. Gen. Stat. § 97-62.5(b).
12. A set of decedent's medical records is admitted into evidence.
13. Decedent's W-2 Wage and Tax Statement for 1998 is admitted into evidence.
14. The curriculum vitae of all physicians who examined decedent are admitted into evidence.
 ***********
Based upon all the competent evidence contained in the parties' stipulations and the record, and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. This matter came on for hearing before the Commission after decedent's first examination and medical reports establishing that he has asbestosis. Decedent died on 9 May 2001, and his claim was amended on 31 October 2001, to reflect that Kenneth Pollard is the acting Executor of decedent's Estate. The record does not contain evidence regarding the cause of decedent's death.
2. Decedent contracted asbestosis and asbestosis-related pleural disease as a result of his injurious exposure to the hazards of asbestos while employed by defendant, Weyerhaeuser Company.
3. Based upon the stipulated description of decedent's job duties while employed by defendant and other evidence submitted, the Full Commission finds as fact that decedent was exposed to asbestos containing materials on a regular basis for more than 30 working days or parts thereof inside of seven consecutive months from 1966 until the day he last worked for defendant.
4. Defendant has admitted decedent did, at the time of the hearing before the Deputy Commissioner, suffer from asbestosis, an occupational disease. This diagnosis has been confirmed through medical documentation from Albert Curseen, M.D., Fred M. Dula, M.D., George L. Grauel, M.D., Richard C. Bernstein, M.D., Caroline Chiles, M.D., Paul Venizelos, M.D., L.C. Rao, M.D., Stephen Schabel, M.D., Robert Shaw, M.D., and Michael Weaver, M.D.
5. Dr. Albert Curseen examined decedent on 26 April 1999, including subjecting decedent to a pulmonary function exam. Dr. Curseen took an occupational history from decedent who stated he had worked at defendant's plant in Plymouth, North Carolina for 31 years as an insulator/boiler worker and masonry worker. During that time, decedent was exposed to large amounts of dust from insulation on a daily basis. While working with boilers, decedent was frequently exposed to large amounts of dust from insulation in a confined area, particularly in the first 15 years of his employment. The insulation covering pipes and boilers was made of asbestos. Decedent also reported that he does not smoke cigarettes.
6. After reviewing decedent's radiographic studies, it was the opinion of Dr. Curseen that the preponderance of the medical evidence substantiated the diagnosis of asbestosis. Dr. Curseen warned decedent about his increased risk for pulmonary malignancies and the need to get annual radiographs to screen against such malignancies as well as to follow the course of his asbestosis.
7. A CT scan and chest x-ray dated 26 April 1999, was interpreted by Dr. Fred M. Dula of Piedmont Radiology in Salisbury, a radiologist and B-reader. Dr. Dula reported interstitial changes in both of decedent's lungs, including short, thickened interlobular septal lines extending to the pleural surfaces on the CT scan. Dr. Dula also reported a diffuse ground-glass appearance to the lung parenchyma which can also indicate a fibrotic process. One punctate pleural calcification was seen posteriorly on the left. On decedent's chest x-ray, Dr. Dula reported interstitial changes in the mid and lower lung zones on both sides, consisting of irregular linear opacities. On the B-read report, there are opacities with the shape and size of "t" primary and "t" secondary with a 2/2 profusion level. Dr. Dula also reported mild bilateral pleural thickening along decedent's chest walls, more evident on plain film than on CT. Overall, it was Dr. Dula's opinion that there were interstitial and otherwise fibrotic-appearing changes in both lungs consistent with asbestosis in the appropriate clinical situation.
8. Dr. George L. Grauel, a B-reader, evaluated a copy of the same chest x-ray of decedent dated 26 April 1999. It was Dr. Grauel's conclusion that there were parenchymal abnormalities present consistent with pneumoconiosis. He reports abnormalities in decedent's lower zones only with a profusion rating of 1/2.
9. Dr. Richard C. Bernstein of Pulmonary and Critical Care Medicine, a B-reader, also evaluated the 26 April 1999 chest film. It was his conclusion that there were parenchymal abnormalities present consistent with pneumoconiosis. He reported abnormalities in decedent's lower and mid zones with a profusion rating of 1/1.
10. Dr. Caroline Chiles, Professor at Wake Forest Medical Center and B-reader, also evaluated decedent's 26 April 1999 chest x-ray. It was her conclusion that there were parenchymal and pleural abnormalities present consistent with pneumoconiosis. She reported abnormalities in all lung zones with a profusion rating of 1/1.
11. Dr. Paul Venizelos of Pulmonary Medicine Associates, a B-reader, evaluated the 26 April 1999 chest x-ray. It was his conclusion that there were parenchymal abnormalities present consistent with pneumoconiosis. He reported abnormalities in all of decedent's lung zones with a profusion rating of 1/1.
12. Dr. L.C. Rao, a NIOSH B-reader at Pulmonary Medicine Associates, reviewed the 26 April 1999 chest x-ray. He reported irregular opacities present in the lower lung zones bilaterally of category s/t with 1/1 profusion. He concluded that with a significant exposure history to asbestos dust, these findings are consistent with the diagnosis of interstitial fibrosis due to asbestosis.
13. Dr. Stephen Schabel, a B-reader, reviewed a copy of the 26 April 1999 chest x-ray. It was his conclusion that there were parenchymal and pleural abnormalities present consistent with pneumoconiosis. He reported abnormalities in the lower and mid zones with a profusion rating of 1/0.
14. Dr. Robert Shaw, a physician specifically assigned to medically monitor the employees of defendant, noted in his report dated 27 January 1999, that decedent had bibasal rales, small interstitial opacities with a profusion rating of 1/0, and stable asbestosis.
15. Dr. Michael Weaver of Eastern Radiologists, a B-reader, reviewed two different chest x-rays of decedent, dated 5 March 1998 and 26 January 1999, and concluded that there were parenchymal abnormalities consistent with pneumoconiosis. On decedent's 5 March 1998 x-ray, Dr. Weaver reported abnormalities in the lower zones only with a profusion rating of 1/1. On decedent's 26 January 1999 x-ray, Dr. Weaver reported abnormalities in the mid and lower zones with a profusion rating of 1/0.
16. Prior to his death, decedent suffered from asbestos related pleural disease and asbestosis as a result of the many years of exposure to the hazards of asbestos while employed by defendant.
17. Based upon the evidence of record, the Full Commission finds that the Hearing Agreement, submitted by the parties to the Commission on 8 March 2000, constitutes an agreement that decedent suffered from asbestosis and that his exposure occurred while in defendant's employ; therefore, the Order of Removal for decedent entered by the Deputy Commissioner pursuant to N.C. Gen. Stat. § 97-61.5 was necessary and required under the law, and a hearing to establish that entitlement was not necessary or required under N.C. Gen. Stat. § 97-61.5.
18. Decedent's average weekly wage was sufficient to entitle decedent to the maximum workers' compensation rate of $588.00 during the year 2000, in which Deputy Commissioner Hedrick ordered decedent's removal from asbestos exposing employment. At the time of the Order of Removal, decedent was out of work on temporary sick leave but intended to return to work. Decedent died 53 weeks after the issuance of the Order of Removal by the Deputy Commissioner.
19. The provisions of N.C. Gen. Stat. §§ 97-60 et seq. are not unconstitutional.
20. Decedent seeks attorney's fees from defendant in this case on the grounds that defendant defended this claim without reasonable ground. This issue should be reserved for subsequent determination.
 ***********
Based upon the stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Decedent contracted the occupational diseases of asbestosis and asbestos related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. §§ 97-53(24) and 97-62.
2. Decedent was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 working days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. N.C. Gen. Stat. § 97-61.5(a) provides in pertinent part that "After the employer and employee have received notice of the first committee report, the Industrial Commission, unless it has already approved an agreement between the employer and employee, shall set the matter for hearing. . . ." Subsection (b) provides that "if the parties enter into an agreement to the effect that the employee has . . . asbestosis, [the Commission] shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks." In the instant case, on 8 March 2000, the date on which the parties submitted the Hearing Agreement to the Commission, the parties entered into an agreement in which it was stipulated that decedent suffered from asbestosis; that he was last injuriously exposed to asbestos during his employment with defendant in that decedent's exposure was for 30 working days within a seven month period and that decedent remained at that time in defendant's employ. Therefore, a hearing after the first examination pursuant to N.C. Gen. Stat. § 97-61.5 was not necessary or required by the statute, and an Order of Removal was required by N.C. Gen. Stat. § 97-61.5(b). Accordingly, the Commission hereby affirms the Order of Removal entered by the Deputy Commissioner on 2 May 2000. Id.
4. Pursuant to N.C. Gen. Stat. § 97-61.5, the weekly amount of decedent's 104 weeks of compensation is to be based upon his "average weekly wages before removal from the industry, but no more than the amount established annually to be effective October 1 as provided in G.S. § 97-29. . . ." The parties have stipulated that decedent's wages were sufficient to entitle him to the maximum compensation rate permitted under the Act for the year 2000, the year the Deputy Commissioner issued the Order of Removal. Therefore, decedent is entitled to 104 weeks of compensation as a result of his diagnosis of asbestosis at the weekly benefit rate of $588.00. N.C. Gen. Stat. §97-61.5; Roberts v. Southeastern Magnesia and Asbestos Co.,61 N.C. App. 706, 301 S.E.2d 742 (1983).
5. When an employee who is entitled to compensation due to asbestosis but dies prior to receiving said compensation, N.C. Gen. Stat. §97-61.6 provides for various methods of payment of said compensation depending on the cause of the employee's death. In this case, the record does not disclose the cause of decedent's death; therefore, the record must be reopened to allow the parties to submit evidence of decedent's cause of death. N.C. Gen. Stat. §§ 97-61.6; 97-85.
6. The issue of the constitutionality of N.G. Gen. Stat. §§ 97-60et seq. has been raised by defendant and ruled upon by the North Carolina Court of Appeals. In Jones v. Weyerhaeuser Co., 141 N.C. App. 482,539 S.E.2d 380 (2000), disc. review denied, 353 N.C. 525, 549 S.E.2d 858
(2001), and in Clark v. ITT Grinnell Industrial Piping, Inc.,141 N.C. App. 417, 539 S.E.2d 369 (2000), the Court ruled unanimously that the provisions of N.C. Gen. Stat. § 97-61.5 are not unconstitutional.
7. Decedent's estate is entitled to have defendant pay for such medical expenses incurred as a result of decedent's asbestos related pleural disease and asbestosis. N.C. Gen. Stat. §§ 97-25, 97-59.
8. By agreement of the parties, decedent's estate is entitled to recover a penalty of 5% of any compensation due decedent exclusive of medical compensation. By further agreement of the parties, defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. §97-18.
9. Plaintiff's claim for attorney's fees from defendant on the ground that defendant unreasonably defended this claim pursuant to N.C. Gen. Stat. § 97-88.1 is hereby held in abeyance until the final award is issued in this claim.
10. Decedent's estate's entitlement to further indemnity compensation and/or death benefits on behalf of decedent under the Act beyond the 104 weeks awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendant shall pay to plaintiff on behalf of decedent compensation for 104 weeks as a result of decedent's contraction of asbestosis, and asbestos related pleural disease while employed by defendant, at a weekly rate of $588.00.
2. Defendant shall pay an additional weekly sum of 5% of the weekly compensation awarded in Paragraph 1 above to plaintiff. As per agreement of the parties, defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
3. Defendant shall pay all medical expenses incurred when bills for the same have been approved, in accordance with the provisions of the Act.
4. A reasonable attorney's fee of 25% of the compensation awarded plaintiff on behalf of decedent in paragraphs 1 and 2 above is approved for plaintiff's counsel. Twenty-five percent of the compensation awarded in paragraphs 1 and 2 shall be deducted from that sum and paid directly to counsel subject to the provisions of N.C. Gen. Stat. § 97-61.6.
5. Defendant shall pay the costs of this proceeding.
 ORDER
This case is hereby reopened for the submission by the parties of evidence as to the cause of decedent's death on 9 May 2001. The parties shall have 30 days from the date of this Order in which to provide the Commission with the appropriate documentation or state whether a further hearing will be necessary.
This the ___ day of October, 2002.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER