***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Young and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Young, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant at all relevant times herein.
3. Defendant was self insured at all relevant times herein.
4. Plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from January 13, 1955, until January 1, 1997.
5. The parties stipulated that plaintiff was last injuriously exposed to asbestos during plaintiff's employment with defendant, and specifically, that plaintiff was exposed to asbestos for thirty days within a seven-month period, as set forth in N.C. Gen. Stat. § 97-57.
6. Defendant manufactures paper and paper products, including paper for crafts, bags, boxes, and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is 3/4 of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960s and the vast majority of the insulation used in the original construction of the buildings contained asbestos. Steam-producing boilers are used at the facility, along with hundreds of miles of steam pipes covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
7. The parties stipulated that plaintiff's income 52 weeks prior to his diagnosis of asbestos was $62,719.81, which is sufficient to justify the maximum rate allowable under the North Carolina Workers' Compensation Act. The parties further stipulated that plaintiff's date of diagnosis was April 27, 2000.
8. The Pre-Trial Agreement of the parties for this case is stipulated into evidence.
9. The employment and income records of plaintiff are stipulated into evidence.
10. The transcript of Joseph Wendlick's testimony at civil trial, his curriculum vitae, and other documentation produced by defendant in discovery has been stipulated into evidence.
11. The relevant medical records of plaintiff, including documentation from Drs. Pape, Curseen, Bernstein, Dula, and Weaver have been stipulated into evidence.
12. Defendant stipulates that all the procedures used in defendant's asbestos medical surveillance program at its facility in Plymouth, North Carolina, were consistent with those outlined as part of the North Carolina Dusty Trades Program contained in N.C. Gen. Stat. §§ 97-60
through 97-61.7. Further, that these procedures were in place during plaintiff's employment at the Plymouth facility.
13. Defendant stipulates that the medical monitoring procedures used in its asbestos medical surveillance program were the same in all Weyerhaeuser plants in the State of North Carolina.
14. Defendant stipulates that the Weyerhaeuser facilities that Mr. Joseph Wendlick referred to in his deposition transcript, which has been stipulated into evidence, included the facilities in North Carolina.
15. Plaintiff contends that he is entitled to an award of a 10% penalty pursuant to the provisions of N.C. Gen. Stat. § 97-12, and defendant stipulated that should the claim be found compensable, defendant would agree by compromise to pay an amount of 5% of all compensation, exclusive of medical compensation, as an award of penalty pursuant thereto.
16. The contested issues before the Commission are:
 (a) Did plaintiff suffer from a compensable asbestos-related occupational disease and/or diseases and/or a complication, aggravation, or acceleration of the disease? If so, what disease and/or diseases?
(b) What benefits is plaintiff entitled to receive, if any?
 (c) Whether plaintiff is entitled to the additional panel examinations as provided in N.C. Gen. Stat. § 97-61.3 to determine what, if any, final compensation he may be due?
 (d) Whether plaintiff is entitled to attorney fees for unreasonably defending this matter?
 (e) Does N.C. Gen. Stat. §§ 97-60 through 97-61.7 apply to plaintiff's claim for benefits, and regardless, are these statutes in violation of the Constitutions of the United States and North Carolina?
 (f) Is plaintiff engaged in an occupation that has been found by the Industrial Commission to expose employees to the hazards of asbestosis under the provisions of N.C. Gen. Stat. §§ 97-60
through 97-61.7?
 (g) At the time of the diagnosis, was plaintiff subject to removal from an occupation that exposed plaintiff to the hazards of asbestosis, as contemplated by N.C. Gen. Stat. §§ 97-60 through 97-61.7?
17. On March 12, 2001, during the beginning of Dr. Pape's testimony, defendant stipulated on the record that plaintiff does suffer from asbestosis. Consequently, Dr. Pape's testimony is rendered unnecessary. Defendant agreed to stipulate that plaintiff has asbestosis after reviewing Dr. Pape's addendum to his Advisory Medical Panel Report dated January 19, 2001. Thus, this issue is no longer contested.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from January 13, 1955, until January 1, 1997.
2. Plaintiff was exposed to asbestos dust at defendant's facility in Plymouth, North Carolina, during his employment. Plaintiff was exposed to asbestos insulation on digesters and surrounding steam pipes when he would tear off the insulation to work on the pipes. He was also exposed to asbestos dust in the bleach plant, where he was a supervisor for approximately 20 years. The bleach plant had asbestos-wrapped steam lines that pipe fitters would work on while plaintiff was in the same area. In addition, plaintiff would work in areas where employees would blow off pipes with an air hose and sweep up debris of asbestos insulation and dust. Defendant did not provide plaintiff with a respirator to protect him against asbestos exposure.
3. Plaintiff was exposed to asbestos-containing materials on a regular basis for more than 30 working days or parts thereof within seven consecutive months from 1955 to 1999.
4. Dr. Richard Bernstein diagnosed plaintiff with asbestosis on April 27, 2000. Dr. Bernstein's diagnosis was based upon plaintiff's history of occupational asbestos exposure and adequate latency period, his chest radiograph, which showed significant parenchymal disease in the lower and middle lobes, his history of mild dyspnea on exertion, as well as pulmonary function testing. Dr. Bernstein recommended close clinical follow-up including annual pulmonary re-evaluations.
5. Dr. Albert Curseen examined plaintiff on October 11, 2000, and confirmed plaintiff's earlier diagnosis of asbestosis by Dr. Bernstein.
6. Dr. Gregory Pape performed the Advisory Medical Evaluation on October 6, 2000, and determined that plaintiff probably does have mild asbestosis. He based his diagnosis upon plaintiff's history of significant asbestos exposure and adequate latency period, his obstruction due to asthma, his somewhat lower total lung capacity than would be expected based upon his degree of obstruction, and findings of increased interstitial markings consistent with asbestosis on plaintiff's CT scan.
7. Dr. Fred Dula interpreted a CT scan and chest x-ray dated August 10, 2000, and determined that there were interstitial changes in a distribution, which would be consistent with asbestosis.
8. Dr. Michael Weaver interpreted a chest x-ray dated April 1, 2000, and determined that there were parenchymal abnormalities present consistent with pneumoconiosis of asbestosis.
9. Defendant failed to produce any conflicting medical evidence to refute these findings.
10. Plaintiff developed asbestosis, an occupational disease, as a result of his employment with defendant. Plaintiff's employment with defendant placed him at an increased risk of developing asbestosis as compared to members of the general public.
11. Plaintiff developed asbestos-related pleural disease, an occupational disease, as a result of his employment with defendant. Plaintiff's employment with defendant placed him at an increased risk of developing asbestos-related pleural disease as compared to members of the general public.
12. Plaintiff's pulmonary impairment is permanent and likely to progress. Plaintiff would benefit from medical monitoring, evaluation, and some treatment in the future as a result of his asbestosis and asbestos-related pleural disease. Further, medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos-related cancers.
13. Defendant's Plymouth facility was found to have high levels of friable asbestos dust by its own Industrial Hygienist, Joseph Wendlick. As a result of Mr. Wendlick's findings, an asbestos medical monitoring program was initiated to comply with the dusty trade provisions of N.C. Gen. Stat. §§ 97-60 through 97-61.7.
14. Plaintiff's income for the fifty-two (52) weeks prior to his diagnosis in 2000 was $67,719.81, which is sufficient to produce the maximum weekly compensation rate for 2000, $588.00.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Prior to his retirement, plaintiff contracted the occupational diseases of asbestosis and asbestos-related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. §§ 97-53(24) and97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. It has been determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure. See Austin v. General Tire, 354 N.C. 344, 553 S.E.2d 680
(2001).
4. Having contracted asbestosis, plaintiff would be entitled to recover weekly compensation at the rate of $588.00, the rate at the time of plaintiff's diagnosis, for each week that he is unable to earn wages by reason of his occupational disease. However, there is no showing that plaintiff has been unable to earn wages by reason of his occupational disease.
5. Plaintiff is entitled to have defendant pay for such medical expenses incurred or to be incurred as a result of plaintiff's asbestos-related pleural disease and asbestosis as may be required to monitor, provide relief, effect a cure, or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-25, and 97-59.
6. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§ 97-61.1, etseq., and is further entitled to any additional benefits due to plaintiff, which shall be determined after additional examinations and hearings.
7. The issue of the constitutionality of N.G. Gen. Stat. §§ 97-60 etseq., has been raised by defendant and ruled upon by the North Carolina Court of Appeals. In Jones v. Weyerhaeuser Co., 141 N.C. App. 482,539 S.E.2d 380 (2000), disc. review denied, 353 N.C. 525, 549 S.E.2d 858
(2001), and in Clark v. ITT Grinnell Industrial Piping, Inc.,141 N.C. App. 417, 539 S.E.2d 369 (2000), the Court ruled unanimously that the provisions of N.C. Gen. Stat. § 97-61.5 are constitutional.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for compensation for 104 weeks pursuant to N.C. Gen. Stat. § 97-61.5(b) is hereby denied.
2. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his asbestosis and asbestos related pleural disease for so long as such examinations, evaluations and treatments tend to affect a cure, give relief, or lessen his disability.
3. The Commission hereby retains jurisdiction in this matter to address the issue of permanent impairment, as plaintiff has not undergone the additional panel examination as required by law for such determination. Upon completion of such examinations, should the parties be unable to agree on what additional compensation, if any, is due, the parties may request a hearing before this Commission on this matter.
4. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing, if necessary, following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further indemnity compensation under the Act beyond that awarded herein and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
This 21st day of October, 2002.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING IN PART AND DISSENTING IN PART:
 S/_______________ DIANNE C. SELLERS COMMISSIONER