***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant is a duly qualified self-insured.
3. An employee-employer relationship existed between the parties at all relevant times. Plaintiff has been employed by defendant at its facility in Plymouth, North Carolina, from 1 January 1972 to present.
4. Plaintiff was last injuriously exposed to asbestos during plaintiff's employment with defendant, and specifically, that plaintiff was exposed to asbestos for 30 days within a seven-month period, as is required by N.C. Gen. Stat. § 97-57.
5. It is stipulated that defendant manufactures paper and paper products such as paper for crafts, paper bags, boxes and pulp for baby diapers. The approximate size of Defendant's plant in Plymouth, North Carolina, is of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960's, and the vast majority of the insulation used in the original construction of the buildings was asbestos containing. There are steam-producing boilers used at the facility. In addition, there are hundreds of miles of steam pipes which were covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
6. It is stipulated that plaintiff has worked for 28 years for defendant as a pipe fitter in maintenance. During his employment, plaintiff was heavily exposed to asbestos as part of his daily duties as a pipe fitter. He worked all over the mill, and frequently did repairs around the boilers. Plaintiff removed the asbestos insulation from the pipe he was working on, primarily by cutting or hammering it off. Knocking the insulation off with a hammer made the air foggy. The asbestos dust covered plaintiff's clothes and his tools. Every time plaintiff had to get to the pipe in order to repair it, he had to remove the asbestos insulation first. The only respiratory protection that plaintiff used for protection from asbestos was a dust mask intermittently during the later years.
7. By separate stipulation signed by counsel for both parties on 13 August 2002, it is stipulated that plaintiff's wages were sufficient to earn the maximum compensation benefits available under the North Carolina Workers' Compensation Act in the year 2001, which was $620.00.
8. Plaintiff contends that he is entitled to an award of 10% penalty pursuant to the provisions of N. G. Gen. Stat. § 97-12, and defendant agreed that should the claim be found compensable, defendant agreed by compromise to pay an amount of 5% of all compensation, exclusive of medical compensation, as an award of penalty pursuant thereto.
9. The parties agreed further that should plaintiff be awarded compensation, the undersigned may include language removing plaintiff from further exposure pursuant to N.C. Gen. Stat. § 97-62-5(b).
10. The parties further agreed that should the undersigned determine N.C. Gen. Stat. §§ 97-60 through 97-61.7 to be unconstitutional, additional testimony could be offered by the parties on the issues of loss of wage earning capacity and/or disability.
11. The parties submitted for consideration by the undersigned the following medical records and reports of plaintiff by the following physicians:
 1. Dr. Dennis Darcey of the Division of Occupational 
Environmental Medicine of Duke University.
2. Dr. Albert Curseen, a pulmonologist.
 3. Dr. Fred M. Dula of Piedmont Radiology in Salisbury, a radiologist and B-reader.
 4. Dr. L.C. Rao, a NIOSH B-reader at Pulmonary Medicine Associates.
 5. Dr. Phillip H. Lucas, a radiologist and NIOSH B-reader.
6. Dr. Michael DiMeo, a panel physician.
12. Subsequent to the hearing before the Deputy Commissioner, the transcripts from the depositions of the following medical experts were submitted for review:
1. Dr. Albert Curseen [July 28, 2000]
2. Dr. Fred Dula [March 6, 2000 and July 20, 2000]
3. Dr. Phillip Lucas [August 22, 2000]
 4. Dr. Allen Hayes [February 17, 2000 and May 24, 2000]
 5. Dr. Michael DiMeo [April 11, 2000, May 25, 2000, August 7, 2000]
 ***********
Based upon all the competent evidence adduced at the hearing and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACTS
1. This matter came on for hearing before the Full Commission after plaintiff's first examination and medical reports establishing that he has asbestosis. Plaintiff is currently employed by defendant.
2. Plaintiff has contracted asbestosis and asbestosis-related pleural disease as a result of his injurious exposure to the hazards of asbestos while employed by defendant, Weyerhaeuser Company.
3. Based upon the stipulated description of plaintiff's job duties while employed by defendant and other evidence submitted, the Full Commission finds as fact that plaintiff was exposed to asbestos containing materials on a regular basis for more than 30 working days or parts thereof inside of seven consecutive months from 1 January 1972 until the present.
4. Plaintiff has been employed by defendant at its facility in Plymouth, North Carolina, from 1 January 1972 to present.
5. Dr. Dennis Darcey of the Division of Occupational 
Environmental Medicine of Duke University conducted an examination of plaintiff on 29 May 1998 which included a history of plaintiff's work exposure to asbestos and review of pulmonary function tests performed at the Lake Norman Center for Breathing on 15 May 1998. Dr. Darcey also reviewed an 8 November 1997 chest x-ray which had been interpreted by Dr. James Johnson and in which "abnormalities were observed including irregular opacities, shape and size t/t in the middle and lower lung zones bilaterally with a profusion of 1/1." Dr. Darcey also noted "bilateral pleural thickening and a small left diaphragmatic plaque." Dr. Darcey also reviewed a high resolution chest CT dated 8 November 1997 which had been interpreted by Dr. Fred Dula. The CT showed "no pleural abnormalities, nonspecific mild interstitial findings were seen." Dr. Darcey was of the opinion that plaintiff "has a clinical diagnosis of asbestosis," and the plaintiff "is also at an increased risk for developing lung cancer and mesothelioma" as a result of his asbestos exposure.
6. Dr. Albert Curseen, a pulmonologist, reviewed plaintiff's 8 November 1997 chest CT and found "no definite focal pleural or diaphragmatic plaque formation. There are interstitial changes of a focal nature in a few locations including short thickened interlobar lines extending to the pleural surfaces. There is also an overall ground glass appearance to the lung parenchyma." Dr. Curseen concluded that the CT presented "the possibility that the interstitial findings would be related to asbestosis in the absence of plaques." Dr. Curseen also examined the 8 November 1997 chest x-ray and concluded that plaintiff has COPD. He noted "nipple shadows bilaterally which are fairly prominent. There are interstitial changes in the mid to lower portions of both lungs consisting of irregular linear opacities. There is mild bilateral pleural thickening, left more than right, more evident on plain film than on the CT." Dr. Curseen concluded that the findings were consistent with asbestosis.
7. Dr. Fred Dula, a radiologist and B-reader, examined a chest x-ray and a CT scan taken on 25 October 1999 and compared both to the earlier films. He found no progression since the prior studies and no evidence of malignancy.
8. Dr. L.C. Rao, a NIOSH B-reader at Pulmonary Medicine Associates, reviewed the 1999 chest film and found "irregular opacities are present in the lower, middle and upper lung zones bilaterally of category s/t with 1/0 profusion." He concluded that "in the presence of a significant exposure history to asbestos dust, these findings are consistent with the diagnosis of bilateral interstitial fibrosis due to asbestosis."
9. Dr. Phillip Lucas reviewed the 1999 chest films and found irregular interstitial opacities throughout both lungs, and classified them as s/t with a profusion of 1/0. He concluded that plaintiff's "bilateral interstitial fibrotic changes [are] consistent with asbestosis in a patient who has had an adequate exposure history and latent period."
10. Dr. Michael DiMeo, the Advisory Medical Panel Physician, examined plaintiff on 11 December 1997 and again on 19 April 1999. Dr. DiMeo was unable to conclude whether or not plaintiff has asbestosis but testified that he noted interstitial changes on the CT scan.
11. Dr. Allen Hayes reviewed the chest x-ray and CT scan taken on 8 November 1997. He diagnosed plaintiff as having emphysema, but found no pleural abnormalities. Dr. Hayes did find parenchymal changes in the lower lobes of plaintiff's lungs, but stated that he was unable to relate them to asbestos exposure without a review of pulmonary function tests. Based upon the fact that Dr. Hayes did not review the more recent x-ray and CT scan, the Full Commission gives greater weight to the testimony of Drs. Darcey, Curseen, Rao and Lucas than that of Dr. Hayes.
12. Based upon the greater weight of the evidence, plaintiff suffers from asbestos related pleural disease and asbestosis as a result of the many years of exposure to the hazards of asbestos while employed by defendant. Plaintiff's pulmonary impairment is permanent and is likely to progress. Plaintiff would benefit from medical monitoring, evaluation and some treatment in the future as a result of his asbestosis and asbestos related pleural disease. Further, the medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos related cancers.
13. Based upon the evidence of record, the Full Commission is required to issue an Order of Removal for plaintiff, pursuant to N.C. Gen. Stat. § 97-61.5. The Order of Removal does not constitute an order removing plaintiff from his employment with defendant, but plaintiff must be ordered removed from any occupational exposure to asbestos for the remainder of his employment.
14. Plaintiff's average weekly wage was sufficient to entitle plaintiff to the maximum workers' compensation rate of $620.00 during the year 2001, in which Deputy Commissioner Garner ordered plaintiff's removal from asbestos exposing employment.
15. The provisions of N.C. Gen. Stat. § 97-60 et seq. are not unconstitutional.
16. Plaintiff seeks attorney's fees from defendant in this case on the grounds that defendant defended this claim without reasonable ground. This issue should be reserved for subsequent determination at the final hearing in this matter.
 ***********
Based upon the stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. §§ 97-53(24) and 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 working days or parts thereof, within seven consecutive months from 1972 to the present, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITT Grinnell Industrial Piping, Inc.,141 N.C. App. 417, 539 S.E.2d 369 (2000); Haynes v. Feldspar ProducingCo., 222 N.C. 163, 22 S.E.2d 275 (1942); Barber v. Babcock WilcoxConstruction Company, 101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks." In the instant case, the Commission has found and concluded that plaintiff contracted asbestosis and asbestos related pleural disease as a result of his employment with defendant; and, the parties have stipulated that plaintiff has been exposed to asbestos; that he was last injuriously exposed to asbestos during his employment with defendant and that the exposure was for 30 days within a seven month period; that plaintiff remains in defendant's employ; and that should plaintiff be awarded compensation, an Order of Removal is appropriate to protect plaintiff from further exposure. Accordingly, the Commission hereby issues an Order of Removal. Id. The Order of Removal does not constitute an order removing plaintiff from his employment with defendant, but plaintiff is ordered removed from any occupational exposure to asbestos for the remainder of his employment.
4. While it has been determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure, see Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001), in this case plaintiff remains in defendant's employ. It has long been recognized that the purpose of the order of removal is not only to stop continuing exposure of the employee to asbestos fibers, but also to ensure that the employee who continues to work avoids any future exposure. See Roberts v. Southeastern Magnesia andAsbestos Co., 61 N.C. App. 706, 301 S.E.2d 742 (1983). It has also long been recognized that the award of 104 weeks of compensation has the additional purpose to compensate the employee for the incurable nature of the disease. Honeycutt v. Carolina Asbestos Co., 235 N.C. 471,70 S.E.2d 426 (1952).
5. Pursuant to N.C. Gen. Stat. § 97-61.5, the weekly amount of plaintiff's 104 weeks of compensation is to be based upon his "average weekly wages before removal from the industry, but no more than the amount established annually to be effective October 1 as provided in G.S. § 97-29. . . ." The parties have stipulated that plaintiff's wages were sufficient to entitle him to the maximum compensation rate permitted under the Act for the year 2001, the year the Deputy Commissioner issued the Order of Removal. Therefore, plaintiff is entitled to 104 weeks of compensation as a result of his diagnosis of asbestosis at the weekly benefit rate of $620.00. N.C. Gen. Stat. §97-61.5; Roberts v. Southeastern Magnesia and Asbestos Co.,61 N.C. App. 706, 301 S.E.2d 742 (1983).
6. The issue of the constitutionality of N.G. Gen. Stat. § 97-60 etseq. has been raised by defendant and ruled upon by the North Carolina Court of Appeals. In Jones v. Weyerhaeuser Co., 141 N.C. App. 482,539 S.E.2d 380 (2000), disc. review denied, 353 N.C. 525, 549 S.E.2d 858
(2001), and in Clark v. ITT Grinnell Industrial Piping, Inc.,141 N.C. App. 417, 539 S.E.2d 369 (2000), the Court ruled unanimously that the provisions of N.C. Gen. Stat. § 97-61.5 are not unconstitutional.
7. Plaintiff is entitled to have defendant pay for such medical expenses incurred or to be incurred as a result of plaintiff's asbestos related pleural disease and asbestosis as may be required to monitor, provide relief, effect a cure or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-25, 97-59.
8. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. § 97-61.1 etseq. and is further entitled to any additional benefits due to plaintiff which shall be determined after additional examinations and hearings.
9. By agreement of the parties, plaintiff is entitled to recover a penalty of 5% of any compensation due him exclusive of medical compensation. By further agreement of the parties, defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
10. Plaintiff's claim for attorney's fees from defendant on the ground that defendant unreasonably defended this claim pursuant to N.C. Gen. Stat. § 97-88.1 is hereby held in abeyance until the final award is issued in this claim.
11. This claim must be remanded to a deputy commissioner for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy shall be addressed at a subsequent hearing before a deputy commissioner.
 *********** ORDER OF REMOVAL
Plaintiff is hereby ordered to be removed from any occupation which further exposes him to the hazards of asbestos. N.C. Gen. Stat. §97-61.5(b).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendant shall pay to plaintiff compensation for 104 weeks as a result of his contraction of asbestosis, and asbestos related pleural disease while employed by defendant, at a weekly rate of $620.00. Said sum shall be paid in a lump sum to plaintiff without commutation subject to an award of attorney's fee.
2. Defendant shall pay an additional weekly sum of 5% of the weekly compensation awarded in Paragraph 1 above to plaintiff which shall also be paid in a lump sum. As to any future weekly compensation or other compensation due, defendant shall increase the amount of such weekly compensation and/or lump sum compensation awarded, by 5%. As per agreement of the parties, defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
3. Defendant shall pay all medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
4. Plaintiff shall undergo additional examinations as provided by law.
5. A reasonable attorney's fee of 25% of the compensation due plaintiff as was awarded in paragraphs 1 and 2 above is approved for plaintiff's counsel. Twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to his counsel.
6. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy shall be addressed at a subsequent hearing before a deputy commissioner.
This the ___ day of February, 2003.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER